No. 74,178

STATE OF KANSAS, *Appellant,* v. AUSTIN GARZA, *Appellee.*
(916 P.2d 9)

Opinion filed April 19, 1996.

*Steven J. Obermeier,* assistant district attorney, argued the cause, and *Paul J. Morrison,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellant.

*Jay L. Norton*, of Moriarty, Erker & Moore, of Overland Park, argued the cause, and *Kevin P. Moriarty*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The State appeals the district judge's finding that no crime was committed and dismissal of a complaint charging defendant Austin Garza with aggravated battery, K.S.A. 21-3414(a)(2)(A). Jurisdiction is pursuant to K.S.A. 22-3602(b)(1).

There was "bad blood" between the defendant, Austin Garza, and Caesar Vaca. On April 8, 1994, around 11:30 p.m., Garza encountered Vaca outside a Town and Country store in Overland Park, Kansas. Each obtained a gun and began firing at the other. Jennifer Minton, who was standing behind the defendant, was struck by a bullet fired by Vaca. Garza was charged with the aggravated battery of Minton. Minton had informed the investigating officers that Vaca fired the first shot, but at the preliminary hearing she testified Garza fired the first shot.

The purpose of a preliminary examination is to determine whether it appears that a felony has been committed and that there is probable cause to believe the defendant committed the offense. If those findings are made, the magistrate will bind the defendant over for arraignment. K.S.A. 22-2902(3). In weighing the evidence the magistrate must determine (1) whether there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief a felony has been committed and (2) if so, whether there is sufficient evidence to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. *State v. Bell*, 259 Kan. 131, Syl. ¶¶ 2, 3, 910 P.2d 205 (1996); see *State v. Farmer*, 259 Kan. 157, Syl. ¶ 2, 909 P.2d 1154 (1996); *State v. Bockert*, 257 Kan. 488, Syl. ¶ 2, 893 P.2d 832 (1995). When the State appeals the dismissal of a complaint, an appellate court's review of an order discharging the defendant for lack of probable cause is de novo. See *Farmer*, 259 Kan. 157, Syl. ¶ 1; *Bell*, 259 Kan. 131, Syl. ¶ 5; *Bockert*, 257 Kan. 488, Syl. ¶ 1.

At the preliminary examination, because the defendant had not fired the shot that hit the victim, the State asserted two theories of prosecution of the defendant for aggravated battery: (1) liability for crimes of another (K.S.A. 21-3205[2]) and (2) transferred intent. After the State had presented its evidence, Garza moved to dismiss the complaint, asserting that under the facts he had not violated the law. Argument to the district judge by the parties focused primarily on the theory of transferred intent rather than aiding and abetting. In his ruling, the district judge found that because the defendant had not fired the shot that injured the victim, the rationale of transferred intent did not apply. The judge made no finding as to the State's argument that the defendant was an aider and abettor. The judge dismissed the complaint.

The State timely appeals from the dismissal of the complaint, arguing both theories. The single issue is whether a person who engages in mutual combat with an opponent may be held criminally liable for an injury to a third party when the injury is caused by a bullet fired from the opponent's gun.

### Transferred Intent

The State argues that the defendant is criminally liable under the doctrine of transferred intent. In *State v. Jones*, 257 Kan. 856, 896 P.2d 1077 (1995), the defendant was charged with first-degree murder. This court explained how the doctrine of transferred intent applied:

"The fact that a homicidal act was directed against one other than the person killed does not relieve the slayer of criminal responsibility. It is generally held that such a homicide partakes of the quality of the original act, so that the guilt of the perpetrator of the crime is exactly what it would have been had the assault been upon the intended victim instead of another." Syl. ¶ 2.

The doctrine of transferred intent is also applicable to the crime of aggravated battery. Defendant was charged with aggravated battery under K.S.A. 21-3414(a)(2)(A): "recklessly causing great bodily harm to another person or disfigurement of another person."

In *State v. Stringfield*, 4 Kan. App. 2d 559, 608 P.2d 1041, *rev. denied* 228 Kan. 807 (1980), the defendant, in shooting at and killing the intended victim, also hit and wounded a bystander. The

defendant was convicted of voluntary manslaughter in the death of the intended victim and of aggravated battery in the injury to the bystander. The Court of Appeals recognized that while a specific intent to injure was a necessary element of the aggravated battery, under the doctrine of transferred intent, the intent to injure could be transferred to a bystander who was unintentionally injured. 4 Kan. App. 2d at 561. The court quoted from 40 Am. Jur. 2d, Homicide § 11, pp. 302-03:

" 'Under this rule, the fact that the bystander was killed instead of the victim becomes immaterial, and the only question at issue is what would have been the degree of guilt if the result intended had been accomplished. The intent is transferred to the person whose death has been caused, or as sometimes expressed, the malice or intent follows the bullet.' " 4 Kan. App. 2d at 561.

The State reasons that the doctrine of transferred intent is applicable here because the defendant and Vaca intended to injure each other and a bystander was injured. The defendant, on the other hand, stresses that it was not his bullet that caused Minton's injury. He argues the doctrine of transferred intent does not apply when an intervening cause of injury occurs. According to the defendant, Minton's injury was a consequential or collateral result, not a direct result, of his action. The defendant reasons that the intent that followed the bullet he fired ended when the bullet came to rest without causing injury. Using this analysis, the defendant asserts the doctrine of transferred intent is inapplicable to the facts here.

Under the doctrine of transferred intent, the fact that a reckless act was directed against one other than the person injured does not relieve the actor of criminal responsibility. It is generally held that such an act partakes of the quality of the original act, so that the guilt of the perpetrator of the crime is exactly what it would have been had the act been directed at the intended victim instead of another.

However, under the rationale of transferred intent, there must be an act by the defendant that causes the injury. If the defendant's bullet fired at Vaca caused Minton's injury, the defendant would be criminally liable for that injury under the doctrine of transferred intent. Here, it was Vaca's bullet, not the defendant's, which caused

Minton's injury. While the intent of the defendant may be transferred, the doctrine does not abrogate the need for the injury to be caused by an act of the defendant. Here, the defendant's act caused no injury to Minton, and application of the doctrine of transferred intent does not impart criminal liability to the defendant for Minton's injury.

## Aiding and Abetting

Even though the doctrine of transferred intent does not impose the criminal responsibility on the defendant for Minton's injury, other legal principles could require the defendant to be criminally responsible. The State cites 2 Wharton's Criminal Law § 178, p. 417 (15th ed. 1994), which states: "If two persons who are engaged in mutual combat in a public street happen to injure a third person, each combatant is guilty of battery as to such a third person even though the injury was unintended." The two cases cited for that statement are civil cases. See *Murphy v. Wilson*, 44 Mo. 313, 318 (1869); *Bannister v. Mitchell*, 127 Va. 578, 584-85, 104 S.E. 800 (1920). *Bannister* concludes that both actors will be held guilty as principals.

The State claims that under the rationale of *Bannister*, the defendant, by engaging in mutual combat, is criminally liable as an aider and abettor. K.S.A. 21-3205 states:

"(1) A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.

"(2) A person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended.

"(3) A person liable under this section may be charged with and convicted of the crime although the person alleged to have directly committed the act constituting the crime lacked criminal or legal capacity or has not been convicted or has been acquitted or has been convicted of some other degree of the crime or of some other crime based on the same act."

For support of its argument that the defendant is criminally liable as an aider and abettor of the person who recklessly battered the victim, the State cites *People v. Abbott*, 84 App. Div. 2d 11,

445 N.Y.S.2d 344 (1981), and *People v. Fabian*, 154 Misc. 2d 957, 586 N.Y.S.2d 468 (1992). In *Abbott*, Abbott and Moon were drag racing with each other. Abbott lost control of his car and struck another car, killing the three occupants of the other car. Both drivers were convicted of criminally negligent homicide. The theory of the prosecution against Moon was that he intentionally aided Abbott in engaging in criminally negligent conduct, drag racing, which resulted in the three deaths. In affirming the convictions, the *Abbott* court recognized that a person may be liable for criminally negligent homicide if the person shares the requisite culpable mental state for the crime and intentionally aids in its commission. The court noted that Moon had engaged in a high-speed race on a busy highway. It observed that although Moon did not personally control Abbott's vehicle when it struck and killed the three victims, it could reasonably be found that by making the race possible, Moon intentionally aided Abbott in the unlawful use of the vehicle. The *Abbott* court concluded that under the facts, Moon shared Abbott's culpability. Quoting LaFave & Scott, Criminal Law § 64, p. 511, the court found: " '[G]iving assistance or encouragement to one it is known will thereby engage in conduct dangerous to life should suffice for accomplice liability as to crimes defined in terms of recklessness or negligence.' " 84 App. Div. 2d at 15.

*Abbott* was relied upon in *Fabian*, 154 Misc. 957. There, a gunfight broke out between defendants Fabian and Peguero. A car stopped at a traffic light was caught in the crossfire. Bullets fired by Fabian and Peguero hit the driver of the car and killed her. A passenger in the car was cut by flying glass when a bullet smashed a car window. Fabian and Peguero were acting in concert. Each was charged with the murder of the driver, assault upon the passenger cut by the flying glass, reckless endangerment of the other passengers and each other, attempted murder of each other, and criminal possession of a weapon. The court recognized that the prosecution had a unique theory of criminal liability in that the prosecution asserted even though Fabian and Peguero were acting at cross-purposes in committing crimes against each other, at the same time they were acting in concert to commit crimes against others. The *Fabian* court stated:

"In general two persons act in concert when 'one . . . engages in conduct' and the other intentionally aids him in that conduct (Penal Law § 20.00). The law also provides that individuals may act together in the commission of a crime based upon their depraved, indifferent or reckless conduct. [Citations omitted.]" 154 Misc. 2d at 961.

The court found that both Fabian and Peguero were acting in concert based on their depraved, indifferent, or reckless conduct. The court noted that though Fabian and Peguero were trying to injure or kill each other, at the same time they were acting in concert to create an explosive condition which resulted in death to one bystander and injury to another. It found:

"They did not, of course, share the community of purpose that is traditionally associated with an indictment based on concepts of joint responsibility. Nevertheless, like the drag racers in *People v. Abbott* . . ., defendants intended to engage in a lawless activity, and acted together in a depraved, or reckless manner likely to result in the injury or death of others." 154 Misc. 2d at 962.

In *People v. Peterson*, 273 Ill. App. 3d 412, 652 N.E.2d 1252 (1995), a similar argument for criminal responsibility was rejected. Peterson and Castile were each convicted of aggravated battery with a firearm, and other crimes, in the shooting injury of Reverend Vinson. Peterson and Castile had a verbal exchange, and as Peterson walked away, he suddenly turned and drew a gun. The two began shooting at each other. It was unknown who fired first, but as they fired Castile chased Peterson. Vinson was shot in the elbow, but it could not be ascertained whose bullet hit Vinson. In finding both Peterson and Castile guilty of aggravated battery with a firearm, the trial judge found that self-defense was not applicable because it was a situation of mutual combat. The trial judge denied motions for a new trial and found that each defendant was equally responsible for Vinson's injury.

On appeal, the Illinois Court of Appeals found that there was insufficient evidence to sustain either defendant's conviction. The court addressed the theory of accountability, or aiding and abetting, and stated: "We have found no case where, as in the case at bar, defendants who acted at cross purposes, spontaneously shooting at each other, were held accountable for each other's conduct." 273 Ill. App. 3d at 420. The court concluded that there was no

evidence either defendant aided and abetted the other in further-ance of a common criminal design. The court also rejected the application of transferred intent because it could not ascertain which defendant committed the unintended wrong. Although the court agreed that either Peterson or Castile shot Vinson, the court found that there was a reasonable doubt as to each defendant's guilt in committing the battery against Vinson because accounta-bility and transferred intent were inapplicable. 273 Ill. App. 3d at 422. The court cited *People v. Lopez*, 72 Ill. App. 3d 713, 391 N.E.2d 105 (1979), where the convictions of identical twin brothers for attempted murder and aggravated battery were reversed be-cause the twin who did not fire the gun was not guilty under an accountability theory and it was not proven which twin did fire the gun.

Because it was determined there was reasonable doubt as to each defendant's guilt, we do not find the reasoning of *Peterson* persua-sive. We do note that although Peterson and Castile were acting at cross-purposes as to each other, they were acting with a common purpose as to bystanders. It was clear that one of them shot Vinson. Thus, under the rationale of *Fabian* and *Abbott*, if Peterson's bullet hit Vinson, Peterson would be guilty as the principal and Castile would be guilty as an aider and abettor; and the roles would be reversed if Castile's bullet was the one that hit Vinson. Either way, though, one would be the principal and the other would be the aider and abettor, and both would be guilty of the aggravated bat-tery.

The State asserts that the rationales of *Fabian* and *Abbott* are applicable because, like the crimes in those cases, the defendant here was charged with a crime involving reckless conduct with another. Garza argues that he did not intentionally aid, abet, advise, hire, counsel, or procure Vaca to commit a crime or knowingly associate with the unlawful venture and participate in a way which indicated that he (Garza) was furthering the success of the venture with Vaca as to Minton. The defendant contends there is no reason to believe that but for his actions Minton would not have been injured. In fact, the defendant asserts, it is clear that Minton was injured only by the actions of Vaca.

The defendant seeks to distinguish *Fabian,* noting that in *Fabian,* a victim was caught in between the two defendants and struck by bullets fired from both defendants' guns. In other words, both defendants had shot the victim. Contrary to the defendant's assertion, however, though the victim who died was struck by bullets from both defendants' guns in *Fabian,* there was no showing which defendant's bullet shattered the glass that injured the other victim. Further, as the two defendants were acting in concert, it is irrelevant that both defendants shot the victim who was killed.

To be convicted as an aider and abettor, "the law requires that the person knowingly associates with the unlawful venture and participates in a way which indicates that such person is furthering the success of the venture." *State v. Hobson,* 234 Kan. 133, 138, 671 P.2d 1365 (1983). An abettor is one that incites another to commit a crime. Incite means to arouse, urge, provoke, encourage, spur on, goad, stir up, instigate, or set in motion. Generally, in criminal law incite means to instigate, persuade, or move another to commit a crime; in this sense incite is nearly synonymous with abet. Black's Law Dictionary 762 (6th ed. 1990).

Garza was charged with recklessly causing great bodily harm or disfigurement of another person. In general, two persons act in concert when one engages in conduct and the other intentionally aids him or her in that conduct. The law also provides that individuals may act together in the commission of a crime based upon their depraved, indifferent, or reckless conduct. *Fabian,* 154 Misc. 2d at 961. The *Fabian* court's analysis recognizes that although two defendants act at cross-purposes as to each other, they may act in concert as to others. The analysis is well reasoned.

Garza, of course, did not share the community of purpose with Vaca that is traditionally associated with a criminal responsibility based on the concept of joint responsibility. There is no evidence the defendant and Vaca planned, or discussed, the incident prior to its occurrence. However, like the two individuals who fired at each other in *Fabian,* Garza and Vaca intended to engage in a lawless activity and acted together in a reckless manner likely to result in injury or death to others. Although we are unable to dis-

cern who fired first, the facts presented in the case show a situation of mutual combat.

Although the defendant and Vaca were certainly acting at cross-purposes in shooting at each other, *Fabian* provides a persuasive analysis that, because the probable consequences were reasonably foreseeable, they were acting in concert as to bystanders. Giving assistance or encouragement to one who it is known will thereby engage in conduct dangerous to life is sufficient for accomplice liability as an aider or abettor as to crimes defined in terms of recklessness or negligence. *Abbott*, 84 App. Div. 2d at 15. Under the facts here, there are reasonable grounds of suspicion to cause a person of ordinary prudence and caution to entertain a reasonable belief that aggravated battery has been committed and probable cause to believe that the defendant aided and abetted in committing the crime of aggravated battery. The trial court erred in dismissing the charge against the defendant.

Reversed and remanded for further proceedings.