No. 75,076

STATE OF KANSAS, *Appellant*, v. JOE DONALD WHITTINGTON, *Appellee.*

(926 P.2d 237)

Opinion filed October 25, 1996.

*Thomas R. Stanton*, assistant county attorney, argued the cause, and *Julie Mc-Kenna*, county attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellant.

*Roger D. Struble*, of Blackwell, Blackwell & Struble, Chtd., of Salina, was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This criminal case concerns a preliminary examination probable cause determination. Defendant Joe Donald Whittington was charged with aggravated battery against his wife. The district court, reasoning that the State failed to present sufficient evidence to bind Whittington over for trial, dismissed the complaint. The State appeals. Our jurisdiction is under K.S.A. 22-3602(b)(1) (State's appeal from order dismissing complaint).

Our standard of review is de novo. See *State v. Garza*, 259 Kan. 826, 827, 916 P.2d 9 (1996). We find probable cause and reverse.

## FACTS

Whittington and his brother hosted a July 4th barbecue at the Whittington residence. Judy, Whittington's wife, arrived home, saw "a couple of girls" in the garage she did not know, and became angry. She screamed at Whittington, who responded by climbing inside his Chevy Blazer, which was parked on the grass next to the driveway. Judy followed Whittington and stood behind the Blazer. Whittington started the engine. Other guests told Judy to move. She did. The Blazer backed up. She then went to the driver's side, slammed a glass mug against the vehicle door, and stood in front of the Blazer. Whittington drove forward, knocking her to the ground. Her wrist was broken. Judy testified that her husband got out to help her, she screamed at him to leave her alone, and he drove away.

Officer Jennings, of the Salina Police Department, spoke with Judy and others who were attending the barbecue. Jennings' impression was that Judy did not want to say anything against her husband. Whittington told Jennings that he and Judy had had a "domestic" dispute, and she told him maybe he should pack his bags and leave. He went into the house for clothes, came back out, and got into the Blazer. As he was attempting to leave, Judy stepped in front of the Blazer, and he drove forward to scare her.

The State charged Whittington with aggravated battery under K.S.A. 21-3414(a)(1)(C) (intentionally causing physical contact) or, in the alternative, aggravated battery under K.S.A. 21-3414(a)(2)(B) (recklessly causing bodily harm). At the preliminary examination, the State called Judy, Officer Jennings, Debra Knight, and Harold Schweitzer, a cousin of Whittington's. Judy testified that the Blazer was on wet grass and skidded when it hit her. According to Judy, Whittington had tried to stop before he slid into her. She told the police she did not feel Whittington intentionally struck her with the Blazer.

Debra Knight was sitting in the garage about 6 to 7 feet from the Blazer at the time of the incident. She saw Whittington getting into the Blazer to leave. She then saw Judy standing with her back against the rear of the Blazer and then hitting the Blazer with a mug. Debra heard the Blazer go into gear and told Jody, Judy's daughter, to "please go get your mother." Judy moved, and Whittington backed up the Blazer. The rear wheels were over the curb in the street. Judy was standing about 3 feet in front of the Blazer. Whittington drove the Blazer forward, striking Judy, who fell backward. Debra thought Whittington was just trying to scare Judy. Debra did not see or hear anything to indicate that Whittington put on the brakes. After Judy was hit, Whittington left. Debra did not see him get out of the Blazer. Judy was taken inside the house.

According to Schweitzer, who witnessed the knockdown, Whittington backed out the Blazer and was coming forward on the grass as if to talk to Judy when she ran in front of the Blazer as Whittington hit the brakes. The Blazer slid about a foot as it struck Judy. Schweitzer did not think Whittington deliberately hit Judy. He described the striking as a "freak deal."

After both sides presented their evidence, the district judge recalled Judy and asked her if she was "not real" excited about having her husband charged with a felony. She answered that she was not. The judge also inquired how long the couple had been married and if there was any history of domestic violence. She said they had been married 17 years with no history of domestic violence. At the close of the State's argument urging a bind over, the district judge said:

"I think the issue is deeper than that, Mr. Stanton [State's counsel]. *If that was two strangers or two acquaintances*, even that logic and argument would certainly be appropriate, *but I don't think the State's got any business disrupting a marital relationship where the parties don't want the State to intervene in that marital relationship*. These people, apparently under questioning, have been perhaps not happily, but certainly married for 17 years. There's been no history of domestic violence. This is a domestic situation which they need to handle between them. *A felony prosecution under circumstances of this could have a very disruptive effect on a marital relationship and the State has just the opposite interest in a marital relationship. You need to encourage the parties, rather than to disrupt those relationships.* (Emphasis added.)"

## DISCUSSION
### Probable Cause

If, from the evidence presented at the preliminary examination, it appears that a crime has been committed and there is probable cause to believe the defendant committed the crime, the magistrate shall bind the defendant over for trial. K.S.A. 22-2902(3). "The evidence need not prove guilt beyond a reasonable doubt, only probable cause. The trial court must draw the inferences favorable to the prosecution from the evidence presented at the preliminary examination." *State v. Sherry*, 233 Kan. 920, 935, 667 P.2d 367 (1983). "Probable cause at a preliminary [examination] signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *State v. Puckett*, 240 Kan. 393, Syl. ¶ 1, 729 P.2d 458 (1986).

We have commented on the magistrate's limited view from the bench by observing:

"It is not the function of the magistrate at a preliminary examination to determine the wisdom of the prosecuting attorney's decision to file and pursue the charges against a defendant. Neither is it the function of the magistrate to conclude there should be no prosecution because the possibility of a conviction may be remote or virtually nonexistent. [Citation omitted.]" *State v. Bockert*, 257 Kan. 488, 492, 893 P.2d 832 (1995).

### Aggravated Battery

K.S.A. 21-3414(a), the statute under which Whittington was charged, provides in part:

"Aggravated battery is:

"(1) . . . (C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or

"(2) . . . (B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted."

In considering the elements of K.S.A. 21-3414(a)(1)(C), we first inquire, was there probable cause that Whittington intentionally caused physical contact with Judy? Whittington struck Judy with the Blazer with sufficient force to knock her backwards, causing her to fall and break her wrist. All the witnesses, including Judy, indicated that they thought Whittington only intended to scare her. Whittington admitted his intent to scare to Officer Jennings. However, according to Knight, Judy had to be warned to move out from behind the Blazer when Whittington started in reverse. After Whittington backed the Blazer's rear wheels over the curb, Judy stood 3 feet in front of the Blazer, apparently on the grass. Whittington could have continued to back up into the street, away from Judy. Instead, he drove the Blazer forward on the grass, striking Judy. Judy's and Schweitzer's testimony suggested Judy may have jumped in front of the Blazer as Whittington was attempting to drive off. However, Knight was clear in her testimony that Judy was standing 3 feet in front of the Blazer when Whittington drove forward, striking her. Whittington clearly intended to drive toward Judy.

The testimony conflicted as to Whittington's movements in and out of the Blazer. Judy testified that her husband left the Blazer and approached to check on her; Knight testified that Whittington drove away after striking Judy, never getting out of his Blazer. Whittington's leaving the scene after Judy was obviously injured suggests he may have intentionally struck her. When there is a conflict in testimony at the preliminary examination, a question of fact exists for the jury, and the magistrate must draw the inference favorable to the prosecution. *State v. Jones*, 233 Kan. 170, Syl. ¶ 4, 660 P.2d 965 (1983).

Next we inquire, was there probable cause that Whittington made physical contact with Judy in a rude, insulting, or angry man-

ner? Judy testified that she started screaming at Whittington as soon as she arrived home and saw the women she did not know in the garage. Knight thought Whittington was calm up to the point Judy banged the mug on the Blazer, because Judy was doing the yelling and Whittington was not saying anything as he was leaving. But Knight thought Whittington intended to scare Judy when he put the Blazer in drive and came forward, hitting her. Although there was no direct testimony that Whittington was "rude, insulting or angry," the movement of the Blazer towards Judy suggests that he may have been.

The third inquiry relates to use of a deadly weapon. The determination of whether an object is a deadly weapon requires an objective test and is a question for the jury. *State v. Manzanares*, 19 Kan. App. 2d 214, Syl. ¶ 2, 886 P.2d 1083 (1994) (In the course of a child custody dispute, Manzanares chased his former wife at high speeds in his van and rear-ended her. The jury's determination that the van was a deadly weapon was proper.).

We have defined "deadly weapon," in the context of the crime of aggravated battery, as "an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury." *State v. Hanks*, 236 Kan. 524, 537, 694 P.2d 407 (1985) (citing Black's Law Dictionary 487 [4th ed. rev. 1968]).

Unlike the victim in *Manzanares*, Judy was not inside another car when the Blazer struck her. Knight testified that after her fall, Judy kept saying, "I can't breathe," which may indicate the Blazer's impact was sufficient to knock the wind out of her. Whittington may not have intended to seriously injure Judy. However, almost any frontal impact between a moving automobile and a human being could produce serious injury. A jury question is raised as to whether Whittington was using the Blazer as a deadly weapon.

Our final inquiry finds probable cause that the contact between the Blazer and Judy was made "in any manner whereby great bodily harm, disfigurement or death can be inflicted." Judy was standing 3 feet in front of the Blazer when Whittington drove forward. She was defenseless. Her fall from the knockdown could have resulted in an injury much more serious than a broken wrist.

We next review the elements of K.S.A. 21-3414(a)(2)(B) (recklessly causing bodily harm). The evidence, particularly Knight's testimony, indicates that Whittington may have recklessly caused bodily harm to Judy, even if he did not intend to hit her when he drove forward. The other elements of the charge have been discussed in our K.S.A. 21-3414(a)(1)(C) analysis.

Viewing the evidence most favorably to the State, there is probable cause sufficient to bind Whittington over. The district judge viewed the incident as a domestic situation to be handled by husband and wife. The fact that Judy and Whittington had been married 17 years and had no history of domestic violence influenced the district judge. The strong inference drawn from the district judge's comment at the close of argument is that if Whittington and Judy had not been married, Whittington would have been bound over. Marriage does not change the probable cause bind over standards for aggravated battery. Whittington struck Judy with a moving vehicle, when she was standing a few feet in front of it.

The district court also may have been influenced by Judy's opposition to the criminal proceeding against her husband. A criminal action is between the State and the accused, and the wishes and actions of the victim do not control whether a prosecution should be pursued. *Puckett*, 240 Kan. 393, Syl. ¶ 4. When the State has established the necessary probable cause at a preliminary examination, it is the duty of the judge to bind the defendant over for prosecution regardless of the wishes of the alleged victim or the personal assessment of the judge as to the merits of the action. 240 Kan. 393, Syl. ¶ 5.

The district court exceeded its authority to the extent that the dismissal of the complaint was based not on a lack of evidence to show probable cause, but on the conclusion that prosecution would have a disruptive effect on the marital relationship. "A county attorney or district attorney is the representative of the State in criminal prosecutions. As such, he or she controls criminal prosecutions. It is the county or district attorney who has the authority to dismiss any charge or to reduce any charge." *State v. Williamson*, 253 Kan. 163, 165, 853 P.2d 56 (1993).

The State advances a public policy argument by asserting that affirming Whittington's dismissal would send a message to law enforcement officers contrary to the legislative expression in K.S.A. 22-2307. K.S.A. 22-2307 requires law enforcement agencies to adopt written policies on domestic violence calls. K.S.A. 22-2307(b)(1) provides that those policies shall include a statement directing officers to make an arrest when they have probable cause to believe that a crime has been or is being committed. The State asserts that K.S.A. 22-2307 is a legislative response to the frequent occasions when the victim of domestic violence requests that no action be taken against the perpetrator.

While the State's public policy observation appears sound, we need not rely on legislative intent to dispose of this case. Our inquiry centers on the evidence presented at the preliminary hearing. Was there probable cause to bind Whittington over on the charge of aggravated battery? The answer is, "Yes."

Whittington points out that the district court found that Judy's actions precipitated the injury by "her conduct in attempting to prevent . . . defendant from exercising a legitimate right to leave when he wanted to." Judy testified, "He was trying to leave and I wouldn't let him leave." Whittington may have been upset when Judy followed him to the Blazer, screamed at him, banged the side of the Blazer with a mug, and stood behind the Blazer as he was attempting to leave. Judy's conduct may have contributed to Whittington's state of mind. Her conduct, however, did not legally excuse Whittington's response for probable cause purposes.

Reversed and remanded with directions to reinstate the charges against Whittington for aggravated battery under K.S.A. 21-3414(a)(2)(B) and 21-3414(a)(1)(C) and for further proceedings in conformity with this opinion.

ABBOTT, J., dissenting: I dissent. I would affirm the trial court.