# STATE OF MONTANA, ex. rel. RANDY KEYES, Relator,

v.

# MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY, the Honorable G. Todd Baugh, Presiding, Respondent.

No. 97-269.
Heard January 15, 1998.
Submitted January 20, 1998.
Decided February 18, 1998.
1998 MT 34.
55 St.Rep. 125.
288 Mont. 27.
955 P.2d 639.

28

For Relator: **L. Sanford Selvey**, Chief Public Defender, Yellowstone County, Billings; **Gary E. Wilcox**, Billings (argued).

For Respondent: **Dennis Paxinos**, Yellowstone County Attorney, Billings; **Chris D. Tweeten**, Chief Counsel, Attorney General of Montana, Helena (argued).

JUSTICE HUNT delivered the Opinion of the Court.

¶1 This is an original proceeding in this Court involving an application for a writ of supervisory control. Randy Keyes (Keyes) is the defendant in a criminal proceeding pending in the Thirteenth Judicial District Court, Yellowstone County, in which he is charged with three alternative counts of deliberate homicide in connection with a shooting incident that occurred on September 30, 1994. On that date, Keyes and Dean LaFromboise exchanged gunfire from their respective vehicles in a parking lot in Billings, Montana. Jacine Chapel was a passenger in the vehicle driven by Dean LaFromboise, and in the process of the shoot-out, she was killed. Although the State has evidence that it was a bullet from Keyes' gun that killed her, its proof is not conclusive. Keyes did not know that Chapel was in the vehicle driven by LaFromboise. However, the State claims that some testimony at trial may establish that Keyes was at least aware that another person was in LaFromboise's vehicle.

¶2 After the shooting incident, Keyes fled from Montana. He was subsequently apprehended approximately two years later, and was

arraigned on August 20, 1996. The information charged Keyes with two alternative counts of deliberate homicide, one by purposely or knowingly killing Chapel and a second based on the State's theory that Keyes was accountable for the conduct of a second shooter it then believed was in Keyes' vehicle. It also charged Keyes with two alternative counts of attempt to commit deliberate homicide against LaFromboise.

¶3    Subsequently, on April 16, 1997, the State filed an amended information charging Keyes with three alternative counts of deliberate homicide. The first count charges Keyes with deliberate homicide of Chapel under the felony murder rule, alleging he caused her death while in the course of committing felony assault against LaFromboise. The second count charges him with deliberate homicide by accountability in violation of §§ 45-5-102 and 45-2-302, MCA. The third count charges him with deliberate homicide by accountability under the alternative theory that an unknown person was in his vehicle and fired the shots that killed Chapel.

¶4    It is the State's theory that LaFromboise and Keyes had for several days engaged in a running gun battle that cumulated in the shoot-out and the death of Chapel. The State filed a "Just-Matt" notice, informing Keyes of its intent to introduce evidence of a prior course of conduct between Keyes and LaFromboise, including La-Fromboise's alleged robbery of Keyes and prior gun battles in the weeks prior to September 30, 1994.

¶5    Keyes filed a motion to dismiss the second count of the amended information and asserted several basis upon which the charge should be dismissed. At a hearing held on May 1, 1997, relating to other pending motions, the State orally moved to dismiss Counts I and III. A hearing on Keyes' motion to dismiss Count II was held on May 5, 1997. After much discussion, the State withdrew its motion to dismiss Counts I and III. Subsequently, on May 7, 1997, the court denied Keyes' motion to dismiss Count II.

¶6    On May 23, 1997, Keyes filed an application requesting that this Court issue a writ of supervisory control and assume supervisory jurisdiction over the issue of whether the second count states an offense under Montana law. The State agreed that this Court should accept supervisory control in order to determine the legal issue of first impression presented by the construction of Count II.

¶7    This Court granted Keyes' application, assumed jurisdiction and ordered the parties to submit supplemental briefs addressing the

legal issue of the propriety and sufficiency of the charge contained in Count II of the amended information.

¶8 Upon completion of our review of the parties' briefs and the parties' presentation at oral argument, we hold that Count II of the amended information does not state an offense under Montana law. We remand this case to the District Court with instructions to vacate its order denying Keyes' motion to dismiss Count II and to enter an order granting his motion to dismiss Count II of the amended information.

¶9 The issue we address is whether the second count of the amended information charges an offense under Montana law.

## DISCUSSION

### I.

¶10 ■ We briefly address the appropriateness of our exercise of supervisory control in this case. The exercise of supervisory control by this Court is authorized by Article VII, Section 2(2) of the Montana Constitution and by Rule 17(a), M.R.App.P. In *Plumb v. Fourth Jud. Dist. Court* (1996), 279 Mont. 363, 927 P.2d 1011, this Court clarified the standard for determining whether to exercise supervisory control. In that case, we followed the line of authority first enunciated in *State ex rel. Whiteside v. District Court* (1900), 24 Mont. 539, 63 P. 395 and stated that "supervisory control is appropriate where the district court is proceeding under a mistake of law, and in so doing is causing a gross injustice." *Plumb*, 927 P.2d at 1014 (citations omitted). In *Whiteside*, this Court previously held that one of the functions of supervisory control is to "enable this court to control the course of litigation in the inferior courts where those courts are proceeding within their jurisdiction, but by a mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate." *Plumb*, 927 P.2d at 1014 (citing *Whiteside*, 63 P. at 400).

¶11 In this case, Keyes urged this Court to exercise supervisory control, arguing that he would be prejudiced if the second count were allowed to stand, because the allegations in that count are ambiguous and he is not sure of what offense he is charged. He additionally contended that the second count does not charge an offense under Montana law. It would waste judicial resources if a subsequent conviction were overturned on appeal for that reason. The State similarly maintained that the interests of justice would be promoted

by the exercise of supervisory control, because Count II presents a legal issue of first impression in Montana. We agree. Requiring Keyes to stand trial on this novel and ambiguously drafted charge will result in unnecessary expenditures of time and resources should this Court hold, as we do now, that Count II does not state an offense under Montana law. We accordingly accepted supervisory control to determine the legal issue of first impression.

## II.

¶12   As noted, the amended information charges Keyes with three alternative counts of deliberate homicide. Although we address solely the issue of whether the second count charges an offense under Montana law, for purposes of our discussion, we examine both Counts I and Counts II of the amended information, which provide as follows:

### COUNT I: DELIBERATE HOMICIDE (FELONY)

That Defendant, RANDY E. KEYES, attempted to commit, committed or is legally accountable for the commission of Felony Assault; and in the course of the Felony Assault, he or any person legally accountable for the Felony Assault caused the death of another human being, to-wit: Defendant and/or another person fired a series of gunshots into a vehicle, and while trying to cause reasonable apprehension of serious bodily injury to Dean LaFromboise, shot and killed Jacine Chapel; all of which is in violation of Section 45-5-102(1)(b), Mont. Code Ann., and against the peace and dignity of the State of Montana.

### COUNT II: DELIBERATE HOMICIDE BY ACCOUNTABILITY (FELONY)

That the Defendant, Randy E. Keyes either before or during the commission of Deliberate Homicide with the purpose to promote or facilitate such commission, abetted or agreed with some other person in the commission of Deliberate Homicide, to wit: Randy E. Keyes encountered Dean LaFromboise, and the two abetted or agreed to engage in a mutual gun battle with one another; and during the promotion or facilitation of such gun battle, Jacine Chapel received several wounds and died as a result; all of which is contrary to Sections 45-5-102, and 45-2-302, Montana Code Annotated, and against the peace and dignity of the State of Montana.

¶13    The two statutes cited within Count II are Montana's account-ability statute and Montana's felony murder statute. The relevant portion of Montana's accountability statute provides:

**When accountability exists.** A person is legally accountable for the conduct of another when:

....

(3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense. ...

Section 45-2-302, MCA.

¶14    Montana's felony murder statute provides:

**Deliberate homicide.** (1) a person commits the offense of delib-erate homicide if:

....

(b) the person attempts to commit, commits, or is legally ac-countable for the attempt or commission of robbery, sexual inter-course without consent, arson, burglary, kidnapping, aggravated kidnapping, felonious escape, felony assault, aggravated assault, or any other forcible felony and in the course of the forcible felony or flight thereafter, the person or any person legally accountable for the crime causes the death of another human being.

Section 45-5-102, MCA.

¶15    In determining whether the second count charges an offense under Montana law, we examine that count in light of Montana's accountability statute and Montana's felony murder statute. When interpreting the statutes, the role of this Court "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Where the language is clear and unambigu-ous, no further interpretation is required.

¶16    We further keep in mind that the purpose of the information is to apprise the defendant of the particular offense with which he is charged. Section 46-11-401(1), MCA, states in part that "[t]he charge must be a plain, concise, and definite statement of the offense charged ...." Indeed, the right of the accused to receive fair notice of both the nature and cause of the accusation is guaranteed by the Sixth Amendment to the United States Constitution, and Article II, Section 24, of the Montana Constitution.

¶17   The State advanced two different theories at various stages of this case as to why Count II does charge an offense, and Keyes, in turn, responds with arguments as to why it does not. We examine each argument and theory individually.

### III.

¶18   Keyes paraphrases Count II to allege that he "was in the commission of the offense of deliberate homicide when he and La-Fromboise agreed to commit the offense of deliberate homicide by agreeing to commit the offenses of shooting at each other and, during [the] commission of those offenses, another person was killed." Keyes argues that this count does not allege the violation of a distinct statute under existing Montana law. He contends that instead, the State is attempting to charge Keyes for a crime that it has newly created by combining two statutes: Montana's accountability statute, § 45-2-302(3), MCA, and Montana's felony murder statute, § 45-5-102(b), MCA. Specifically, Keyes argues that Count II does not properly charge him with accountability for deliberate homicide, because that statute does not impose joint accomplice liability upon defendants for unintended, foreseeable crimes committed while they are engaged in an intended crime. He maintains that the State apparently recognized this and thus impermissibly combined the accountability statute with the felony murder statute, which provides for transferred intent.

¶19   It appears that at least initially the State did intend to charge Keyes with a crime created by merging the two statutes together. Although the State now contends that the second count alleges a straight-forward felony murder charge, the wording of the second count itself charges Keyes with deliberate homicide by accountability, and the language of that count traces the accountability statute. This is in direct contrast with the language of Count I, which everyone agrees charges Keyes with deliberate homicide under the felony murder rule and which accordingly traces the language of the felony murder statute. Furthermore, at the hearing before the District Court, the State repeatedly stated that in Count II it intended to charge Keyes with deliberate homicide through accountability and not deliberate homicide under the felony murder rule. It stated that the charge combined the accountability statute with the felony murder statute. As the State explained its theory to the District Court pursuant to these two statutes, Keyes, either before or during the commission of the deliberate homicide of Chapel, entered into an

agreement with LaFromboise that they would try to kill each other by shooting at each other, which resulted in the death of Chapel.

¶20 We agree with Keyes that Count II does not charge an offense under Montana law. Count II does not properly charge Keyes with accountability for deliberate homicide. In order to be guilty under a theory of accountability, the plain language of Montana's accountability statute requires that "either before or during the commission of an offense," a person must agree to aid another person "in the planning or commission of the offense." *See* § 45-2-302, MCA. In other words, the offense being committed and the offense that the parties agree to commit must be the same.

¶21 In this case, the offense Keyes is charged with committing differs from the offense he allegedly agreed to commit. The second count charges Keyes with the commission of deliberate homicide of Chapel. However, the facilitation of the commission of that offense was not an agreement between Keyes and LaFromboise to commit deliberate homicide of Chapel, but rather an agreement to engage in a gun battle. Montana's accountability statute does not extend criminal liability to unintended, yet reasonably foreseeable deaths, such as the death of Chapel, that result as a consequence of committing the agreed upon offense. In other words, Montana's accountability statute does not provide for transferred intent.

¶22 Because Montana's accountability statute does not extend criminal liability for the unintended death of Chapel, it appears that the State thus grafted elements of Montana's felony murder rule to the accountability statute. Unlike the accountability statute, Montana's felony murder rule specifically provides for transferred intent. Pursuant to the doctrine of transferred intent, the fact that a crime (here, the alleged agreement between LaFromboise and Keyes to shoot each other) was directed at a person other than the person who ultimately was killed (Chapel), does not relieve the perpetrator of criminal responsibility. As that doctrine is embodied in the felony murder rule, a person who causes the death of another during the course of an enumerated felony is criminally responsible for the death. *See* § 45-5-102, MCA. In this case, the State has combined the elements of transferred intent from the felony murder statute with Montana's accountability statute in order to charge Keyes for the death of Chapel.

¶23 Charging Keyes for a crime derived by combining elements of two statutes is impermissible. It is a fundamental principle in Montana that conduct does not constitute a criminal offense unless

proscribed by statute. Section 45-1-104(2), MCA, states: "No conduct constitutes an offense unless it is described as an offense in this code or in another statute of this state." In this case, the State did not charge Keyes with an offense in the code, but rather charged him with an offense it newly created by combining elements from two statutes.

¶24   The principle case upon which the State relies in support of its theory, *State v. Garza* (Kan. 1996), 916 P.2d 9, is distinguishable. In that case, the Kansas Supreme Court held that the defendant could properly be charged as an aider and abettor for the injury of a bystander that occurred when the defendant engaged in a gunfight with another combatant. *Garza*, 916 P.2d at 15. However, unlike Montana's accountability statute, the accountability statute in Kansas specifically provides for accomplice liability for any other foreseeable crime committed during the course of the intended crime:

> (2) A person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended.

Section 21-3205, K.S.A. As we have already stated, Montana's accountability statute does not provide for transferred intent, and the State cannot create a new offense by grafting elements from Montana's felony murder rule to that statute. Accordingly, we hold that the second count of the amended information does not charge an offense under Montana law.

### IV.

¶25   The State asserted a different theory in its briefs to this Court as to why Count II charges an offense under Montana law. The State now contends that the second count charges Keyes with deliberate homicide of Chapel under Montana's felony murder rule, with the underlying felony being accountability for the attempt by LaFromboise and Keyes to commit deliberate homicide against each other in the gun battle. The State asserts that attempted deliberate homicide constitutes a "forcible felony" within the meaning of Montana's felony murder rule, § 45-5-102, MCA. At oral argument, the State clarified that the phrase in Count II which states "either before or during the commission of Deliberate Homicide" refers to the death of Chapel.

¶26   Keyes, on the other hand, contends that even under the State's newly advanced theory, the second count does not allege an offense under Montana law. He disputes the State's contention that attempted deliberate homicide is a "forcible felony" within the meaning

of § 45-5-102, MCA. He argues that deliberate homicide is the most serious offense a person can commit, and that if the legislature had intended to include it as an underlying offense, it most certainly would have specifically enumerated it. Additionally, Keyes contends that the second count does not allege an offense under Montana law, because (1) engaging in a gun battle actually constitutes two offenses, not one; and (2) Keyes, as a victim of LaFromboise's attempt to kill him, cannot be held accountable under Montana's accountability statute.

¶27    Finally, Keyes contends that in any event, Count II by its plain language does not allege a violation of deliberate homicide under Montana's felony murder rule, § 45-5-102, MCA. He argues that if the State had intended to charge him with felony murder, it would have used language similar to that used in Count I. He maintains that the State is bound by the plain language of the count and it cannot switch its theories midstream simply because it realizes that the manner in which it originally charged Keyes is legally insufficient.

¶28    Although we are inclined to accept the State's view that attempted deliberate homicide does fall within the residual clause of the felony murder rule based upon the plain meaning of the statute and the definition of "forcible felony" at § 45-2-101(23), MCA, we need not reach that issue at this time. We hold that the second count does not allege an offense under Montana law for several other reasons.

¶29    ▪ First, although the State describes the underlying felony as alleging that Keyes and LaFromboise attempted to kill each other, nowhere in Count II does the State actually charge Keyes with "attempt" to commit deliberate homicide. Each count of the information must give the defendant fair warning of the offense for which he is charged. *See* § 46-11-401(1), MCA: "The charge must be a plain, concise, and definite statement of the offense charged, *including the name of the offense.* ..." (emphasis added). Count II does not put Keyes on notice that the underlying felony is attempt to commit deliberate homicide.

¶30    ▪ Second, the express language of the felony murder rule refers to the commission of a single underlying felony offense. Specifically, a person commits "the offense" of deliberate homicide, if he commits a "forcible felony," and in the course of the "forcible felony" causes the death of another human being. *See* § 45-5-102, MCA. But, engaging in a "mutual gun battle" does not constitute an offense under Montana law. Montana does not have, for example, a statute that outlaws dueling. At most, the charge that Keyes and LaFrom-

boise engaged in a mutual gun battle can be interpreted to allege the commission of two separate offenses: (1) Keyes attempted to kill LaFromboise, and (2) LaFromboise, in turn, attempted to kill Keyes. However, we have already stated that the count must clearly give notice to Keyes that he is charged with attempt to commit deliberate homicide.

¶31 Even if the charge was interpreted to allege the commission of two criminal offenses, Keyes becomes the victim of LaFromboise's offense, and LaFromboise becomes the victim of Keyes' offense. As a victim, neither can be legally accountable for a death caused by the other's crime. Montana's accountability statute excludes victims from such accountability. *See* § 45-2-302(3): "However, a person is not so accountable if: (a) he is a victim of the offense committed, unless the statute defining the offense provides otherwise. ..."

¶32 The State once again points to *Garza*. It contends that *Garza* lends support to its argument that where the underlying felony is accountability, a defendant may be held accountable as an aider and abettor where that defendant engaged in a mutual gun fight and created the situation whereby a bystander was killed. *Garza*, however, is distinguishable for reasons in addition to the reason we already pointed out. In that case, the state charged Garza with aggravated battery, not deliberate homicide, when a bystander was injured during a gun battle. *Garza*, 916 P.2d at 10. The Kansas Supreme Court held that "[g]iving assistance or encouragement to one who it is known will thereby engage in conduct dangerous to life is sufficient for accomplice liability as an aider and abettor *as to crimes defined in terms of recklessness or negligence." Garza*, 916 P.2d at 15 (emphasis added) (citation omitted).

¶33 Unlike the defendant in *Garza*, Keyes is not charged with a crime defined in terms of recklessness or negligence. For example, the State did not charge him with negligent endangerment for engaging in conduct that created a substantial risk of death to others. Section 45-5-208, MCA. Rather, he is charged with deliberate homicide, a crime whose elements differ substantially. The *Garza* court did not address whether a person could be accountable in a similar situation for deliberate homicide under the felony murder rule; the court did not interpret Kansas' felony murder statute; and, of course, the court did not address whether Kansas has a dueling statute. Accordingly, we do not find *Garza* to be persuasive.

¶34 Finally, we find merit to Keyes' argument that by its plain language, the second count does not allege deliberate homicide under

Montana's felony murder rule. As written, the charge is ambiguous and difficult to understand. It took the State several briefs and an oral argument to sufficiently apprise this Court of the exact offense with which Keyes is charged. It certainly cannot be held to adequately apprise the defendant of the offense.

¶35    Although the State charged Keyes with novel allegations in the second count, what is strikingly obvious is the fact that the State did not charge Keyes with deliberate homicide under the felony murder rule for causing the death of Chapel while in the course of committing the forcible felony of attempted deliberate homicide against LaFromboise. The State clearly did not want to portray either Keyes or LaFromboise as a "victim." Its theory is that the two men engaged in a running gun battle over a course of several days with the intent of continuing the battle until one or the other was killed. The State believes both men are responsible for Chapel's death, and it thus attempted to find a way to charge both with accountability without having to declare either a victim. In so doing, however, it charged Keyes with the second count, which does not allege an offense under Montana law. However frustrated the prosecution may be with the law as it is currently written, it is not the prosecution's function to fill gaps it perceives exist under the current criminal code by creating new offenses. We hold that the second count does not charge an offense under Montana law.

¶36    For these reasons, the District Court is directed to vacate its order denying Keyes' motion to dismiss the second count of the amended information, and the court instead is directed to enter an order granting the motion.

CHIEF JUSTICE TURNAGE, JUSTICES NELSON, REGNIER, GRAY, LEAPHART and TRIEWEILER concur.