NOT DESIGNATED FOR PUBLICATION

No. 123,723

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MELISSA C. LOWE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed November 23, 2022. Affirmed.

*Carol Longenecker Schmidt*, of Schmidt Law, LLC, of Newton, for appellant.

*Noelle Relph*, legal intern, *Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., WARNER and COBLE, JJ.

PER CURIAM: Melissa Lowe appeals her conviction for aggravated assault with a deadly weapon. Lowe challenges the sufficiency of the evidence supporting that conviction and claims the district court should have instructed the jury on simple assault as a lesser included offense. After carefully reviewing the record and the parties' arguments, we find no error and affirm Lowe's conviction.

1

FACTUAL AND PROCEDURAL BACKGROUND

The events giving rise to Lowe's conviction took place after her older daughter's youth softball game on June 30, 2019. When the game ended, Lowe drove with her younger daughter to pick up her older daughter from the softball complex, parking her car in the gravel parking lot to wait. Lowe's older daughter left the game and began walking towards the parking lot with Mary Angela Logsden and Logsden's daughter.

Logsden had been dating Lowe's ex-husband for over three years and lived with him. At the time of the softball game, Lowe and her ex-husband were involved in a contentious custody dispute over their two daughters. There was significant animosity between Logsden and Lowe due to Logsden's relationship with Lowe's ex-husband and the ongoing custody suit.

Logsden testified at trial that as Lowe's older daughter and the others approached the parking lot, Logsden saw Lowe "completely staring her down" from the driver's seat of Lowe's car. Lowe got out of the car to let her daughter in. Lowe alleged that at that point, Logsden called Lowe an offensive name, and then Lowe got back in the car.

Logsden testified that after Lowe reentered her car, Logsden heard tires spinning behind her. Logsden turned around and saw Lowe smiling and laughing while driving the car towards her. Lowe swerved towards Logsden, coming within inches to a foot of her, and then exited the complex while making an obscene gesture at Logsden. Other eyewitnesses, including Lowe's daughters, corroborated this account.

Logsden called the police and reported the incident. The State charged Lowe with aggravated assault with a deadly weapon (her vehicle) under K.S.A. 2018 Supp. 21-5412(b)(1).

2

The case against Lowe proceeded to a jury trial. Lowe's defense theory was that she was upset about the name Logsden had called her, but she did not commit a crime; instead, she merely "[drove] off in a huff" after the encounter. Witnesses at the trial provided conflicting accounts of various aspects of the incident—the person who instigated the conflict, whether Lowe purposefully spun her tires, the speed of Lowe's car, and how close the car came to Logsden. For example, relevant to this appeal:

- Lowe admitted to spinning her tires on the gravel but stated that it was an accident. Lowe's younger daughter testified that it was unusual for her mother's tires to spin, that she had not spun her tires before in a similar situation, and that she told her mother that she should not have done it.

- Witnesses generally testified that Lowe approached Logsden at a speed somewhere between 5 and 15 miles per hour. Logsden told the police immediately after the incident that Lowe was driving about 5 to 10 miles per hour and was going faster than cars typically drove when exiting softball games. Lowe's older daughter testified she saw her mother's speedometer and it "wouldn't have gone over like 15." And Logsden's daughter testified that Lowe was driving at a "pretty decent speed" and "[f]aster than what you would go through the complex." An eyewitness testified that Lowe was going "a little bit faster than [a car in] a parking lot should have been."

- Lowe denied swerving towards Logsden. But an eyewitness testified that Lowe deliberately swerved the car at Logsden and was trying to hit her; he explained that there was plenty of room in the parking lot for Lowe to not have had to swerve. Lowe's younger daughter testified that Lowe swerved towards Logsden and it was "kind of close," but then Logsden herself hit the car. Logsden's daughter also testified that Lowe swerved towards her mother.

3

- There was also conflicting evidence about how close Lowe's car came to Logsden. Lowe's older daughter had previously told a police detective that there were at least 3 feet between Logsden and the car. Logsden testified that Lowe got "very close" to her with her car and "if I had a belt on that day, it would have scraped her car because she was that close to me." Logsden stated that she put her arm out to brace herself when Lowe got within 1 inch of her, and that she feared Lowe would hit her with the car. Lowe's younger daughter testified that her mother came within a few inches of Logsden. Logsden's daughter testified that the car was close enough to Logsden that she could touch the car with her arm out and elbow bent.

The jury found Lowe guilty of aggravated assault with a deadly weapon. Lowe moved for a new trial, arguing the evidence was insufficient to support her conviction because she did not knowingly commit the crime, because she sped off only to get away from Logsden after being insulted, and because Logsden's apprehension of harm was not reasonable. The court denied her motion, explaining that it is the jury's role to assess the credibility of witnesses and to weigh testimony. The court sentenced Lowe to an underlying 12-month prison term but placed her on probation for 24 months. Lowe appeals.

DISCUSSION

Lowe contests her conviction of aggravated assault with a deadly weapon in two ways. She argues that the evidence at trial was insufficient to show she committed the assault with a deadly weapon. She also claims the district court should have instructed the jury on the crime of simple assault, which is a lesser included offense of aggravated assault with a deadly weapon. We do not find these claims persuasive.

1. *There was sufficient evidence from which the jury could find that Lowe's car was used as a deadly weapon.*

Lowe first argues that the evidence at trial was insufficient to show that she committed the crime of aggravated assault with a deadly weapon. When a defendant challenges the sufficiency of the evidence, an appellate court reviews the evidence "in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Rosa*, 304 Kan. 429, Syl. ¶ 1, 371 P.3d 915 (2016). The court does not reweigh the evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Keel*, 302 Kan. 560, 566, 357 P.3d 251 (2015).

To prove aggravated assault with a deadly weapon, the State was required to show that Lowe knowingly placed Logsden in "reasonable apprehension of immediate bodily harm" and did so with a deadly weapon. See K.S.A. 2018 Supp. 21-5412(a), (b)(1). Lowe challenges the second of these elements, arguing that the State did not demonstrate that her car was used as a deadly weapon.

Kansas law defines a "deadly weapon" as "an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury." PIK Crim. 4th 54.280 (2019 Supp.); *State v. Colbert*, 244 Kan. 422, 426, 769 P.2d 1168 (1989). Lowe asserts that the State was required to show that Lowe believed—i.e., "calculated"—that her car was a deadly weapon and intended to use it in that fashion. Kansas courts have rejected this subjective analysis, however, because the question whether an item is a deadly weapon is an objective one. As the Kansas Supreme Court explained:

> "This court's use of the word 'calculated' in the definition of 'deadly weapon' does not mean a jury in an aggravated battery case involving an allegation of use of a deadly weapon must answer a subjective question: Did the defendant actually believe that he or

5

she was using an instrument in a way that made that instrument deadly? Rather, the jury must answer an objective question: Would a reasonable person in defendant's circumstances have believed that? Put another way, was it likely the instrument would be deadly, when used in the way and at the time and place it was used by defendant?" *State v. Charles*, 304 Kan. 158, 170-71, 372 P.3d 1109 (2016), *abrogated on other grounds by State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017).

Kansas courts have recognized that a car may be used as a deadly weapon. See *State v. Whittington*, 260 Kan. 873, 878, 926 P.2d 237 (1996); *State v. Bailey*, 223 Kan. 178, 184, 573 P.2d 590 (1977) (car was a deadly weapon); *State v. Bradford*, 27 Kan. App. 2d 597, 600, 3 P.3d 104 (2000) (car used in deadly manner "could very well have been a deadly weapon" supporting conviction for reckless aggravated battery). We reach a similar conclusion here.

The jury was presented with evidence that Lowe looked at Logsden, spun the car's tires, approached Logsden at higher rate of speed than usual in the gravel parking lot, and swerved within inches of her. As the court noted in *Whittington*, "almost any frontal impact between a moving automobile and a human could produce serious injury." 260 Kan. at 878. A reasonable person could conclude that Lowe's car was used as a deadly weapon when she assaulted Logsden.

Lowe is correct that there was conflicting evidence offered at trial on all these matters—the tires, the speed of the car, and whether (and how close) Lowe swerved toward Logsden. But it is not the role of this court to reweigh conflicting evidence. Nor is it appropriate for appellate judges, who were not present at trial to observe the witnesses' demeanor or listen to their testimony, to second-guess the jury's credibility assessments. Instead, we must determine whether there was evidence from which a jury could conclude Lowe's vehicle was used as a deadly weapon. Here, the evidence was sufficient to support the jury's verdict.

2. *An instruction on simple assault was not factually appropriate in this case.*

Lowe also asserts that the district court erred because it did not instruct the jury on simple assault as a lesser included offense of aggravated assault with a deadly weapon. Because Lowe did not request an instruction on simple assault at trial, she must demonstrate that the instruction was legally and factually appropriate and that the failure to provide that instruction was clearly erroneous. See K.S.A. 2021 Supp. 22-3414(3); *State v. Gentry*, 310 Kan. 715, 720, 449 P.3d 429 (2019).

The law is well settled that an instruction on simple assault would have been legally appropriate in Lowe's case, as simple assault is a lesser included offense of aggravated assault with a deadly weapon. *State v. Werkowski*, 220 Kan. 648, 652, 556 P.2d 420 (1976); see K.S.A. 2018 Supp. 21-5412(a)-(b) (showing that all of the assault elements are identical to some elements of aggravated assault). But the parties disagree about whether a simple-assault instruction was factually appropriate here.

Lowe argues that the simple-assault instruction was factually appropriate because the jury could have concluded that the State did not establish that her car was a deadly weapon. The State counters that the instruction was not factually appropriate because the only evidence presented showed that if there was an assault at all, it was committed with Lowe's car—a deadly weapon.

The State has the better argument. The only evidence presented at trial showed an encounter between Lowe and Logsden while Lowe was in her car. Lowe's defense was not that she did not use a car, but that she did not commit an assault *at all*. In other words, she argued that she did not commit a crime because she drove away, albeit angrily, after Logsden allegedly insulted her. Based on the evidence at trial, the jury could have concluded that Lowe committed either aggravated assault with a deadly weapon or no crime at all. There was no evidence presented to show that Lowe committed a simple

7

assault, meaning an assault without the vehicle. Thus, an instruction on simple assault would not have been factually appropriate in this case.

Because the simple-assault instruction was not factually appropriate, Lowe has not shown the district court erred by not instructing the jury on that offense.

Affirmed.