No. 62,484

STATE OF KANSAS, *Appellee*, v. DONALD BURGESS, *Appellant.*
(781 P.2d 694)

Opinion filed October 27, 1989.

*Lucille Marino*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Wendell J. Barker*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Donald Burgess appeals from his conviction by a jury of one count of aiding and abetting second-degree murder (K.S.A. 21-3205 and 21-3402). We affirm.

The facts of the case were hotly disputed and will be set forth in some detail. Shortly after 1:00 a.m. on July 25, 1987, Jari Wills, a black man, entered the Saddleback Lounge in Ottawa, Kansas. The defendant, Donald Burgess, and Mike Hicks were sitting at the bar and as Wills passed them someone called him a "nigger." Wills, evidently thinking Burgess made the remark, told Burgess not to call him that again. While addressing Burgess, Wills jabbed Burgess several times in the chest with his finger. While Wills was jabbing Burgess, Mike Hicks apparently threw a punch at Wills, and a barroom brawl ensued. "Toad" Tevis, a friend of Burgess and Hicks, joined in the affray, which lasted only a short time. There was conflicting testimony as to the number of people actually involved and the numbers varied between four and seven. It is undisputed that Burgess, Hicks, and Tevis were involved with Wills in the encounter.

During the fight, numerous bottles and glasses were broken and Burgess suffered several cuts to his body from broken glass on the floor of the barroom. Shortly after the fight started, Wills suffered an abdominal stab wound that extended upward, penetrating the heart. Wills stumbled out of the tavern and shortly thereafter was pronounced dead at Ransom Memorial Hospital in Ottawa. The evidence is conflicting as to who administered the stab wounds which resulted in Wills' death. Donald Burgess has steadfastly maintained that he was not a willing participant and that his only role was in attempting to avert and then stop the fight involving Hicks and Tevis against Wills. Burgess denies that he was the one who made the racial slurs to Wills. There were several other people in the tavern at the time, many of whom were egging on the fighters and who were also yelling racial slurs at Wills. Among those was the defendant's wife, Sherrell Burgess. Burgess, Sherrell, Hicks, and Tevis were all charged with aiding and abetting second-degree murder. No one was charged as a principal. Additional facts will be stated as necessary for an understanding of the issues.

Three issues are raised in this appeal:

1) Whether the trial court erred by refusing to give a requested instruction on involuntary manslaughter;
2) whether the trial court erred by refusing to give a requested instruction on self-defense; and
3) whether the trial court erred in refusing to read back the

testimony of an eyewitness following the jury's request for a transcript of his testimony.

The first two issues raised in this appeal challenge the trial court's refusal to give two jury instructions requested by the defendant. In *State v. Hunter*, 241 Kan. 629, 644, 740 P.2d 559 (1987), this court summarized the pertinent scope of appellate review:

"In a criminal action, a trial court must instruct the jury on the law applicable to the theories of all parties where there is supporting evidence. *State v. Davis*, 236 Kan. 538, Syl. ¶ 4, 694 P.2d 418 (1985). . . . When considering the refusal of a trial court to give a specific instruction, the evidence must be viewed by the appellate court in the light most favorable to the party requesting the instruction. *State v. Myers*, 233 Kan. at 616."

For his first issue, the defendant argues that the trial court erred in refusing to give his requested instruction on involuntary manslaughter found at PIK Crim. 2d 56.06. At the hearing held in chambers on the proposed jury instructions, defense counsel argued that involuntary manslaughter is a lesser degree of the crime of murder. Counsel also argued that there was evidence that the defendant's actions amounted to a lawful act of self-defense committed in an unlawful or wanton manner, without intent to kill, thereby warranting an involuntary manslaughter instruction. The State's primary objection to the instruction was based on the argument that it is impossible to be guilty of intentionally aiding and abetting an unintentional killing.

In this appeal, defendant argues that an involuntary manslaughter instruction was required under two distinct theories. First, he contends that there was evidence that the homicide occurred as a result of an act of self-defense or defense of others, done with excessive force. This argument coincides with the argument raised before the trial court that the defendant committed a lawful act (self-defense) in an unlawful or wanton manner (with excessive force). See *State v. Gregory*, 218 Kan. 180, 185-86, 542 P.2d 1051 (1975). Second, defendant argues that the jury could have found that he intentionally aided and abetted others in committing involuntary manslaughter, *i.e.*, in the wanton commission of battery, an unlawful act not amounting to a felony, which resulted in the homicide. Although the record reflects that the defendant did not raise this argument specifically at trial, the State argued that it was impossible to find the defendant guilty of aiding and abetting involuntary manslaugh-

ter. It appears from the record that defendant did not request an instruction on aiding and abetting involuntary manslaughter but requested only an instruction on the offense of involuntary manslaughter. The requested instruction would have allowed the jury to convict Burgess as the actual perpetrator of the homicide, not as an aider and abettor. While K.S.A. 21-3205, and our cases interpreting it, allows a person charged as a principal to be convicted as an aider and abettor, our research has disclosed no case which holds that a defendant specifically charged as an aider and abettor may be convicted as a principal.

K.S.A. 21-3107(3) describes the trial court's duty to instruct the jury on offenses other than those charged specifically in the information. It reads in part:

"In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty *under the information or indictment and upon the evidence adduced.*" (Emphasis added.)

K.S.A. 21-3107(2) defines included crimes:

"An included crime may be any one of the following:
  (a)  A lesser degree of the same crime;
  (b)  an attempt to commit the crime charged;
  (c)  an attempt to commit a lesser degree of the crime charged; or
  (d)  a crime necessarily proved if the crime charged were proved."

Subsections (b) and (c) are not applicable in this case since the defendant does not contend that an attempt instruction was required. The issue is whether involuntary manslaughter is either (1) a lesser degree of the crime charged under subsection (a), or (2) a crime necessarily proved if the crime charged were proved under subsection (d). If it is neither, the trial court had no duty to give the requested instruction on involuntary manslaughter.

Second-degree murder and involuntary manslaughter are both degrees of the general crime of homicide and obviously involuntary manslaughter is a lesser degree of homicide than is second-degree murder. However, the crime of involuntary manslaughter is not a lesser degree of aiding and abetting second-degree murder. Therefore, we conclude that in the present case the trial court was under no obligation to give a lesser included offense instruction under K.S.A. 21-3107(2)(a).

In *State v. Adams*, 242 Kan. 20, 744 P.2d 833 (1987), the court, in a unanimous opinion, adopted a two-pronged test to be used

in determining whether a lesser crime is a lesser included crime under K.S.A. 21-3107(2)(d). In *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), we discussed the test enunciated in *Adams*. In *Fike* this court stated:

"The first step is to determine whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. . . .

"The result of the first step of the analysis, however, is not necessarily conclusive. Even if the statutory elements of the lesser offense are not all included in the statutory elements of the crime charged, a particular crime may nevertheless meet the statutory definition in 21-3107(2)(d) of an included crime under the second step of the analysis. This approach requires the trial court to carefully examine the allegations of the indictment, complaint, or information *as well as* the evidence which must be adduced at trial. If the factual allegations in the charging document allege a lesser crime which does not meet the statutory elements test *and* the evidence which must be adduced at trial for the purpose of proving the crime as charged would also necessarily prove the lesser crime, the latter is an 'included crime' under the definition in 21-3107(2)(d)." 243 Kan. at 368.

The statutory elements of involuntary manslaughter are clearly not all present in the statutory elements of aiding and abetting second-degree murder. Thus, there was no requirement to give the requested instruction under the first prong of the test.

The complaint in the instant case alleged:

"That on or about the 25th day of July, 1987, the said Don Burgess, within the above and within named County and State, then and there being, did then and there contrary to the statutes of the State of Kansas unlawfully, feloniously and intentionally aid or abet others in the malicious killing of a human being, to-wit: Jari Wills, committed without deliberation or premeditation and not in the perpetration or attempt to perpetrate a felony in violation of K.S.A. 21-3402, and 21-3205, a Class B felony."

Nothing in the allegations of the complaint requires that the State prove the defendant committed involuntary manslaughter in order to support a conviction of the crime charged, aiding and abetting second-degree murder. Under *Fike* and K.S.A. 21-3107(2)(d) and (3), the complaint must allege a lesser crime which it is necessary to prove in order to prove the crime charged. As pointed out in *Fike*, *State v. Adams*, 242 Kan. 20, is a prime example of the application of the second prong of the test under K.S.A. 21-3107(2)(d). In *Adams* the basis for the offense charged, involuntary manslaughter, was that the defendant was driving while under the influence of alcohol, a misdemeanor. Thus, under the charging instrument *and* under the evidence

required to support the crime charged, it was necessary for the State to allege and prove the defendant was driving while under the influence of alcohol. Under those circumstances, the crime of driving while under the influence of alcohol was a lesser included crime under subsection (2)(d) as one which it was necessary to prove to obtain a conviction of the crime charged. That is not the situation in the present case. We conclude the court did not commit error in refusing to instruct on the lesser crime of involuntary manslaughter.

The second issue is whether the trial court erred in refusing to give the jury the defendant's requested instruction on self-defense, PIK Crim. 2d 54.17, which reads:

"The defendant has claimed his conduct was justified as (self-defense) (the defense of another person).

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force. Such justification requires both a belief on the part of defendant and the existence of facts that would persuade a reasonable person to that belief."

The instruction incorporates the language of the self-defense statute found at K.S.A. 21-3211, which reads:

"Use of force in defense of a person. A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force."

In the present case the defendant did testify that he was attempting to protect himself but he was adamant in his contention that he took no aggressive action whatsoever. He testified repeatedly that he was merely trying to be a peacemaker between Hicks and Wills and that he, Burgess, took no affirmative action. Sherrell Burgess also testified the defendant was trying to defend himself from Wills. Other witnesses testified that Burgess was an active participant in the fight, which apparently started when Hicks threw the first punch at Wills. The fight was precipitated by someone, either Hicks or Burgess, calling Wills a "nigger." Mark Alan Gifford testified that Burgess called Wills a "nigger" more than once and that Burgess was an active participant in the fight. Laura Adams and Ruth Reynolds both testified that Burgess slapped or hit Wills. Thus, the evidence was conflicting as to whether the defendant was an innocent party caught up in the fight between Hicks and Tevis on the one hand, and

Wills on the other, or whether he was actively participating in the altercation.

K.S.A. 21-3211 requires a defendant asserting the defense of self-defense to have used force "against an aggressor." A defendant is only justified in using force "when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force." The problem with defendant's argument is that there is absolutely no evidence that defendant, Hicks, or Tevis could reasonably believe that it was necessary to stab Wills with a knife to defend themselves. Nor was there any evidence upon which they could reasonably believe that Wills contemplated the "imminent use of unlawful force." Defendant and/or Hicks provoked the fight and Hicks threw the first punch. Wills may have been faced with defending himself against the other three, but none of the participants was faced with unlawful force from Wills.

It must be kept in mind that defendant was not charged as a principal but as an aider and abettor of second-degree murder. There was no justification for the use of a knife against Wills, and under the evidence the statute simply does not apply.

40 Am. Jur. 2d, Homicide § 142 states:

"As a general rule, the doctrine of self-defense cannot be invoked to excuse a killing done in mutual combat willingly entered into, although the mere fact that one who kills another who seems to be about to make a murderous assault upon him was willing to enter into a fight with the decedent with deadly weapons does not destroy his right to rely on self-defense as justification for the killing, if he acted solely for the protection of his own life, and not to inflict harm upon his adversary. But the view has been taken that one willingly entering into a mutual combat is not justified or excused in taking life unless he has withdrawn in good faith and done all in his power to avert the necessity of killing."

Even if defendant had been charged as the principal in this case, there is no evidence which would justify the use of a deadly weapon against Wills. There was no evidence upon which any of the participants could reasonably believe that it was necessary to use a deadly weapon against Wills' "imminent use of unlawful force." As we said in State v. Childers, 222 Kan. 32, 48, 563 P.2d 999 (1977), "[i]n order to rely on self-defense as a defense, a person must have a belief that the force used was necessary to defend himself [or another] and, also, show the existence of some facts that would support such belief."

We are not unmindful of the rule in Kansas that in a homicide case a defendant is entitled to an instruction on self-defense, even when he denies the act or any involvement in the homicide, if there is any evidence which would justify self-defense. See *State v. Smith*, 161 Kan. 230, 167 P.2d 594 (1946); *State v. Jackett*, 81 Kan. 168, 105 Pac. 689 (1909); *State v. Heiskell*, 8 Kan. App. 2d 667, 666 P.2d 207 (1983). However, those cases are not applicable to the facts and evidence in this case. We find no error in the refusal to give a self-defense instruction.

The defendant's third and final argument is that the trial court erred in refusing to have the testimony of Mark Gifford read back, after the jury specifically requested a transcript of his testimony. The record reflects that no objection was made at the time of the refusal, the issue was not raised in the motion for a new trial, and the issue was never presented to the trial court. The defendant is precluded from raising for the first time a point which was not raised before the trial court. *State v. Holley*, 238 Kan. 501, 508, 712 P.2d 1214 (1986). Even if the issue had been properly raised, any error would be harmless error as Gifford's testimony was generally harmful to the defense.

The judgment is affirmed.

HERD, J., dissenting in part and concurring in part: The trial court erred in refusing to give the defendant's requested instruction on self-defense. The facts in this case are bad but that should not lead us to change the law of the giving of an instruction on self-defense. We have consistently held that a trial court is required to instruct the jury on self-defense when there is any evidence tending to establish self-defense, even if that evidence is slight and consists solely of the defendant's testimony. *State v. Hill*, 242 Kan. 68, 78, 744 P.2d 1228 (1987); *State v. Smith*, 161 Kan. 230, 237, 167 P.2d 594 (1946). In order to rely upon the defense of self-defense, the defendant must believe that the force used to defend himself was necessary and show some facts which would support such a belief. *State v. Childers*, 222 Kan. 32, 48, 563 P.2d 999 (1977).

The majority holds that the facts here do not justify the use of the foregoing rule. Let us examine them. Mr. Wills walked into the Saddleback Bar, where he was met with hostility by a group of white persons, including the defendant. Racial slurs were directed at Wills. He reacted by taking on the whole group. Wills

hit the defendant and then dragged him across the floor. Burgess denies that he made the racial remarks or that he willingly entered into the altercation. He claims that all of his actions in the scuffle were to defend himself and that while defending himself someone, whose identity is unknown, knifed Wills.

Burgess' testimony entitles him to have his defense considered. The facts presented provide support for his belief that the force used was necessary to defend himself. As we recently stated in *State v. Hill,* "[t]he issue is not whether it is probable or even likely that a defendant was, in fact, acting in self-defense. The issue is whether there is any evidence supporting defendant's statement that the force used was necessary to defend herself." 242 Kan. at 79.

The fact that there was strong evidence introduced to the effect Burgess made the racial remarks and was a willing participant in the fight does not negate the fact that evidence was also introduced to support the defense of self-defense. Abandoning the well-established rule with regard to a self-defense instruction merely because we agree with the jury's verdict is wrong and a dangerous precedent. We are not the factfinders. I would reverse on this issue and grant Burgess a new trial with the proper instructions. I would affirm on all other issues.

SIX, J., not participating.