(20 P.3d 1269)

No. 84,261

STATE OF KANSAS, *Appellee*, v. MARLON D. WALKER, *Appellant*.

Opinion filed March 23, 2001.

*Bradley P. Sylvester*, special appellate defender, for the appellant.

*Boyd Isherwood* and *Elizabeth Reimer*, assistant district attorneys, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before PIERRON, P.J., LEWIS, J., and BUCHELE, S.J.

PIERRON, J.: Marlon D. Walker appeals his conviction by a jury for one count of discharging a firearm at an occupied dwelling and one count of criminal possession of a firearm. Walker argues there

was insufficient evidence to support his convictions and the trial court erred in not giving a self-defense instruction, excluding testimony, and failing to grant a mistrial.

Elesha Toles held a birthday party at her apartment. She testified that when she heard gunshots, she told everyone to lie down on the floor. She testified the gunshots were loud and sounded close by. There were bullet holes in her kitchen walls and in a table and a chair that were not there before the shooting.

Noel Mapes, an armed security guard for the apartment complex, heard the gunshots and ran to the parking lot in front of Toles' apartment. He testified he saw a man standing in front of Toles' apartment firing across the parking lot. When he heard return fire coming from the other side of the parking lot, he turned and recognized Walker as the shooter. Walker ran from the scene after returning approximately six shots towards Toles' apartment.

Mapes testified that Walker later returned to the scene and was wearing the same clothes, a tan shirt with dark stripes and tan shorts, as when Mapes had seen him earlier. Mapes asked Walker for his gun and Walker said he did not have it. A woman began yelling at Walker. Mapes grabbed the woman and Walker began to walk away.

Officer Lee Eisenbise testified that when he arrived at the apartments, Katrina Walker was yelling for the police. As he approached the woman, he noticed a man wearing tan pants and no shirt start walking away. Eisenbise ordered the man to stop, but the man began running and Eisenbise lost sight of him. Minutes later, Officer Erik Landon stopped a man wearing khaki pants and no shirt, and carrying a red shirt. Landon took the man back to the scene and Mapes identified him as Walker and as the shooter.

The police searched Katrina's apartment and found a box of .357 caliber ammunition. Katrina is Walker's sister, and he was staying at her apartment. Bullet fragments collected from Toles' apartment and the station wagon in front of her apartment were consistent with the ammunition found in Katrina's apartment and consistent with being fired from a .357 magnum handgun.

A jury convicted Walker of criminal discharge of a firearm at an occupied dwelling and criminal possession of a firearm.

The first issue raised in this appeal challenges the trial court's refusal to give a self-defense instruction requested by Walker. In *State v. Hunter*, 241 Kan. 629, 644, 740 P.2d 559 (1987), this court summarized the pertinent scope of appellate review:

"In a criminal action, a trial court must instruct the jury on the law applicable to the theories of all parties where there is supporting evidence. *State v. Davis*, 236 Kan. 538, Syl. ¶ 4, 694 P.2d 418 (1985). . . . When considering the refusal of a trial court to give a specific instruction, the evidence must be viewed by the appellate court in the light most favorable to the party requesting the instruction."

In determining the availability of a self-defense or defense of another instruction under K.S.A. 21-3211, we have applied a two-pronged test. The first prong is subjective—did the defendant sincerely believe it was necessary to kill or use potentially lethal force in order to defend himself or herself or another? The second prong is objective—was the defendant's belief reasonable? *State v. Jordan*, 250 Kan. 180, 185, 825 P.2d 157 (1992); *State v. Childers*, 222 Kan. 32, 48, 563 P.2d 999 (1977). The defendant, under the second prong, must "show the existence of some facts that would support such belief." *State v. Burgess*, 245 Kan. 481, Syl. ¶ 5, 781 P.2d 694 (1989).

Walker now argues that while there was little evidence presented to show how the shooting began and the role each person played in the shooting, the absence of such evidence should not be used to prevent him from utilizing a self-defense instruction. He also argues that whether he was the aggressor remained a question for the jury and the trial court invaded the province of the jury by deciding that the situation was something akin to a wild west shoot-out. He contends the fact that his shots were wild, striking a car and an apartment, would support the contention that if he was seen shooting, he was simply returning fire. Walker did not testify. There was no other testimony concerning who had started the shooting.

In *Burgess*, 245 Kan. 481, Burgess was involved in a barroom brawl which began when he or someone sitting with him used a racial epithet as Jari Wills walked past them. Thinking Burgess had spoken, Wills jabbed him several times in the chest with his finger and told Burgess not to call him that again. The fight began when

someone threw a punch at Wills, and it ended within a short time when Wills was stabbed. All participants were charged with aiding and abetting second-degree murder; no one was charged as a principal. Burgess denied taking any aggressive action. Nonetheless, he challenged the trial court's refusal to give an instruction on self-defense. The *Burgess* court concluded there was no evidence which would justify the use of a deadly weapon against Wills. 245 Kan. at 487. Thus, the request for the self-defense instruction was properly refused.

For the trial court in the present case, the significance of *Burgess* was the court's quoting the following excerpt from 40 Am. Jur. 2d, Homicide § 142:

" 'As a general rule, the doctrine of self-defense cannot be invoked to excuse a killing done in mutual combat willingly entered into, although the mere fact that one who kills another who seems to be about to make a murderous assault upon him was willing to enter into a fight with the decedent with deadly weapons does not destroy his right to rely on self-defense as justification for the killing, if he acted solely for the protection of his own life, and not to inflict harm upon his adversary. But the view has been taken that one willingly entering into a mutual combat is not justified or excused in taking life unless he has withdrawn in good faith and done all in his power to avert the necessity of killing.' " 245 Kan. at 487.

The "mutual combat rule" cited by the court in *Burgess* is covered by the Kansas statutes on self-defense. The general theory of self-defense is provided in K.S.A. 21-3211: "A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force." K.S.A. 21-3214(3) sets the underpinnings of "mutual combat" by providing that using force in self-defense is not available to a person who:

"Otherwise initially provokes the use of force against himself or another, unless:

"(a) He has reasonable ground to believe that he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or

"(b) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force."

In *State v. Meyers*, 245 Kan. 471, Syl. ¶ 1, 781 P.2d 700 (1989), the court adopted the mutual combat rule:

"The doctrine of self-defense cannot be invoked to excuse a killing done in mutual combat willingly entered into. The individual who willingly provoked the mutual combat is not justified or excused in taking life unless he has withdrawn in good faith, has communicated that withdrawal to his opponent, and has done all in his power to avert the necessity of killing."

In this case, the only evidence presented at trial of the shooting was the testimony of Mapes, the security officer on duty at the apartment complex that evening. Mapes testified he had been acquainted with Walker during the past 7 or 8 months and knew him as "Jason." Mapes testified he heard two gunshots and ran to the parking lot where the shots were fired. He saw a man standing in front of Toles' apartment, pointing a gun across the parking lot. The man fired two shots across the parking lot. Because the man was in an unlighted area, Mapes could not identify him. Mapes aimed his gun and told the man to halt and drop his gun.

Mapes testified that several people came out of Toles' apartment behind the man who had fired the gun. Then Mapes heard a gunshot from behind him and the shattering of the back window of a station wagon parked in front of Toles' apartment. Mapes turned around and saw the second shooter approximately 30 yards away. He recognized the second shooter as Walker. Walker was standing under an overhead light near a dumpster on the street corner. Mapes saw Walker fire his gun five more times toward Toles' apartment. Mapes told Walker to halt and Walker ran from the scene.

There was no evidence that would have supported a finding that Walker acted in a reasonable belief that his own safety depended upon his use of force against another. Walker did not testify in his own behalf. He did not call any other witnesses whose testimony would have supported a finding that he reasonably believed he had fired at the first shooter only in self-defense. The act of returning gunfire in a shoot-out is not, by itself, an act of self-defense. We agree with the trial court that the only evidence showed that the confrontation between Walker and the other shooter was mutual combat. There was no evidence justifying a self-defense instruction.

Next, Walker argues the trial court abused its discretion in not allowing testimony concerning statements made by Sharris Nelson.

The admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Stallings*, 262 Kan. 721, Syl. ¶ 6, 942 P.2d 11 (1997).

Outside the presence of the jury, Walker proffered the testimony of Officer Bachman as to statements made by Sharris Nelson. Officer Bachman testified that for identification purposes, he took Nelson to the police car where Walker was sitting and asked if she could identify him as the shooter. Officer Bachman testified that Nelson looked at Walker and that she said she "didn't believe he was the shooter, but he was there."

Walker initially argued that Nelson's statements were not hearsay since they were not being offered for the truth of the matter. However, Walker claimed that if the trial court considered the statements to be hearsay, then they fell within the excited utterance exception to the hearsay rule. The court held that Nelson's statements were being offered for the truth of the matter and did not fall within any hearsay exceptions. Following a brief recess, Walker indicated that he had directed the court to the wrong hearsay exception and that Nelson's statements were admissible under the general necessity/present sense impression exception to the hearsay rule.

The trial court ruled that Nelson's statements were hearsay and that it had no evidence before it of whether Nelson was unavailable under the general necessity exception. However, the court permitted Walker to proffer the evidence of his investigator, Sue Neeley, as to efforts made in attempting to contact Nelson. Neeley testified that she had tried to call Nelson, made three attempts to knock on doors at the apartment complex where the shooting occurred, and called all the witnesses listed on the police report in

an attempt to find Nelson. On cross-examination, Neeley testified she had not attempted to contact Nelson at her home address or place of employment listed on the police reports. Walker also requested permission to call the prosecutor to testify that the State had subpoenaed Nelson, she had not appeared pursuant to the subpoena, and this fact supported a finding that Nelson was unavailable.

The trial court stated that Walker could call the prosecutor to the stand, but the court would not allow a party to rely on the representations of another party concerning a witness' unavailability as a substitute for the party's own duty to search. The court held that it was incumbent upon the party who wished to bring a person before the court to do an exhaustive search, and at a minimum to go to the place of employment and the last known residence if that information is available. The court found Walker had not performed an exhaustive search and consequently there was not a sufficient showing that Nelson was unavailable. We agree.

Walker also argues Nelson's statements were not hearsay. Without any supporting authority, he argues Nelson's testimony does not go to the truth of the matter asserted, since it neither proves nor disproves the identity of the shooter. Walker argues that since Mapes' identification of the shooter was questionable because of the error of the color of clothes worn by the shooter, Nelson's statements show additional confusion as to the identity of the shooter.

The trial court did not abuse its discretion in finding Nelson's statements were hearsay. K.S.A. 2000 Supp. 60-460 defines hearsay as evidence of a statement made by someone other than the witness testifying which is offered to prove the truth of the matter asserted. Contrary to statements of defense counsel, Nelson's statements were being offered as an eyewitness identification that Walker was not the shooter.

Walker also argues on appeal that Nelson's statements fall within the excited utterance exception to hearsay statements in K.S.A. 2000 Supp. 60-460(d)(2). Walker abandoned this argument before the trial court when he told the court he was mistaken about which hearsay exception applied and that he would be using the general

necessity exception in K.S.A. 2000 Supp. 60-460(d)(3) for authority. We do not consider issues raised for the first time on appeal. "An issue not presented to the trial court will not be considered for the first time on appeal." *State v. Smith*, 268 Kan. 222, 243, 993 P.2d 1213 (1999).

Even considered on its merits, we find little evidence to support the contention that Nelson's statements resulted from being startled sufficient to cause the requisite nervous excitement to qualify for the exception.

Walker additionally argues that even if the trial court correctly held that Nelson's statements were inadmissible hearsay, the statements still should have come into evidence under rules of fundamental fairness. Walker contends it was crucial to his defense to elicit testimony that the shirt collected by the police did not match the description given by Mapes and that a second eyewitness could not identify him as the shooter. Walker's desires do not overcome the court's duty to keep legally unreliable evidence from coming before the jury. We also note that no evidence exists in the record that Nelson was actually an eyewitness to the shooting.

Next, Walker argues there was insufficient evidence to support his convictions. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999). A conviction of even the gravest offense may be sustained by circumstantial evidence. *Smith*, 268 Kan. at 236.

There is sufficient evidence in this case to support a conviction based on an eyewitness identification that Walker was involved in mutual combat with another shooter standing in front of Toles' apartment. There was also evidence that bullet holes from the gunfight were found in Toles' apartment that were not there before the gunfight had started. The jury was sufficiently instructed concerning Mapes' eyewitness identification, and the jury was allowed to judge the reliability of the identification.

Walker also addresses the sufficiency argument from the standpoint that the doctrine of transferred intent does not allow the intent to harm a person to transfer to the intent to harm a dwelling. Walker cites no cases supporting his argument other than those concerning the general theory of transferred intent.

In the present case, the jury received the following instruction on the doctrine of transferred intent:

"When a criminal act is directed against one other than the intended victim, the responsibility of the actor is exactly as it would have been had the act been completed against the intended victim. In other words, the requisite criminal intent may be transferred from an intended victim to an unintended victim."

Transferred intent is an accepted principle in the courts of this state. In *State v. Moffitt*, 199 Kan. 514, 535, 431 P.2d 879 (1967), *overruled on other grounds State v. Underwood*, 228 Kan. 294, 615 P.2d 153 (1980), the court stated:

"The fact that the homicidal act was directed against one other than the person killed does not relieve the slayer of criminal responsibility. It is generally held that such a homicide partakes of the quality of the original act, so that the guilt of the perpetrator of the crime is exactly what it would have been had the assault followed upon the intended victim instead of another. (1 Wharton's Criminal Law and Procedure, Homicide, § 193, p. 438.)"

In *State v. Stringfield*, 4 Kan. App. 2d 559, 561, 608 P.2d 1041, *rev. denied* 228 Kan. 807 (1980), the court applied the transferred intent doctrine to aggravated battery. The court held that while a specific intent to injure was a necessary element of aggravated battery, under the doctrine of transferred intent, the intent to injure could be transferred to the harm to a bystander who was unintentionally injured. The *Stringfield* court noted:

" 'Under this rule, the fact that the bystander was killed instead of the victim becomes immaterial, and the only question at issue is what would have been the degree of guilt if the result intended had been accomplished. The intent is transferred to the person whose death has been caused, or as sometimes expressed, the malice or intent follows the bullet.' " 40 Am. Jur. 2d, Homicide § 11, pp. 302-303." 4 Kan. App. 2d at 561.

In *State v. Garza*, 259 Kan. 826, 916 P.2d 9 (1996), the court addressed the transferred intent doctrine in a shootout situation where another shooter's bullet, not the defendant's bullet, caused

a bystander's death. The court held the defendant's act caused no injury and the doctrine did not apply, but the court later discussed the defendant's liability as an aider and abettor. 259 Kan. at 828-30. In discussing transferred intent, the court stated:

"Under the doctrine of transferred intent, the fact that a reckless act was directed against one other than the person injured does not relieve the actor of criminal responsibility. It is generally held that such an act partakes of the quality of the original act, so that the guilt of the perpetrator of the crime is exactly what it would have been had the act been directed at the intended victim instead of another." 259 Kan. at 829.

Here, the doctrine of transferred intent is applicable because Walker and the shooter standing in front of Toles' apartment intended to injure each other by conducting a shootout with multiple shots fired by each person. The bottom line is that Walker fired his gun at a person standing in front of Toles' apartment. Gratefully, no one was injured in Toles' apartment. However, Walker's criminal intent to shoot another person was transferred into the criminal intent required for the commission of criminal discharge of a firearm into an occupied dwelling. Walker clearly must have known that his shots would hit the apartments if he missed the other gunman.

Last, Walker argues the trial court erred in not granting a mistrial based on the testimony of Officer Landon.

K.S.A. 22-3423(1)(c) permits the trial court to declare a mistrial when prejudicial conduct makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution. The decision to declare a mistrial is within the trial court's sound discretion and will not be disturbed on appeal unless there is a clear showing that such discretion was abused. Again, judicial discretion is abused when no reasonable person would adopt the view taken by the trial court. *State v. Rinck*, 256 Kan. 848, 853, 888 P.2d 845 (1995).

The trial court's power to declare a mistrial is to be used with great caution, under proper circumstances, to ensure that all parties receive a fair trial. When an event of prejudicial misconduct, the damaging effect of which cannot be removed by admonition and instruction, is presented to a jury, the trial judge should declare

a mistrial. *State v. Chandler*, 252 Kan. 797, 801, 850 P.2d 803 (1993). The defendant has the burden of proving he or she was substantially prejudiced by a trial court's decision. *State v. Hammon*, 245 Kan. 450, 456, 781 P.2d 1063 (1989).

During direct examination, the State asked Officer Landon what Mapes had said about the man in the back seat of the patrol car. Officer Landon responded, "He positively identified Robert A. Walker—well, he stated his name was Robert A. Walker, he [Walker] lied to me about his name—as being one of the individuals who was firing towards three black males."

Walker did not contemporaneously object to Officer Landon's statement. " 'A party must make a timely and specific objection to the admission of evidence at trial in order to preserve the issue for appeal.' " *State v. Sims*, 265 Kan. 166, 174, 960 P.2d 1271 (1998) (quoting *State v. Cheeks*, 258 Kan. 581, 593, 908 P.2d 175 [1995]). Rather, Walker cross-examined Officer Landon and then raised an objection after the jury had been sent home for the evening.

Walker argued that Officer Landon's statement that Walker had lied to the police was in and of itself a highly prejudicial remark and not warranted under the circumstances when Officer Landon could have simply stated that Mapes identified the suspect in custody. The State contended that the comment was unsolicited and came out only as a clarification of the officer's police report. The trial court held that Officer Landon's comments did not rise to the level sufficient to warrant a mistrial. The court also found, based on the colloquy when the statement came out, there was no bad faith on the part of the prosecution and the witness just blurted out the statement.

We find no abuse of discretion in the trial court's decision not to grant a mistrial. First, Walker did not contemporaneously object to Officer Landon's statement and the trial court lost the opportunity to admonish the jury to disregard it. Second, we agree with the trial court that Officer Landon's statement was not of such a prejudicial nature to warrant a mistrial. As pointed out by the State, the jury had already heard testimony from Mapes that Walker had lied to him about his name, and it should have been no shock to the jury that Walker had lied to Officer Landon about his name

also. Further, Officer Landon's statement was not a personal opinion of Walker's guilt, but rather a true statement that Walker lied about his name. See *State v. Steadman*, 253 Kan. 297, 304, 855 P.2d 919 (1993) (police witnesses can testify from their experience as to a role the defendant played in an illegal enterprise—they cannot testify that in their opinion the defendant was guilty of the crime).

We find no cause for reversal.

Affirmed.