NO. 93-264

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs-

BILL J. HENDERSON,

      Defendant and Appellant.

FILED

JUL 7 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Edmund F. Sheehy, Jr.; Cannon and Sheehy,
        Helena, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        Barbara Harris, Assistant Attorney General,
        Helena, Montana

        Robert L. Deschamps, III, County Attorney,
        Missoula, Montana

Submitted on Briefs: February 17, 1994

Decided: July 7, 1994

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Bill Henderson was convicted of accountability for incest and sexual intercourse without consent in the Fourth Judicial District Court, Missoula County. He correctly asserts error in the District Court's refusal to grant a directed verdict on the accountability for incest charge and its admission of expert testimony. We reverse and remand.

Bill Henderson (Henderson) was the stepfather of A.C., D.C., and B.C., the natural children of his wife, Stacey Henderson. The children lived with the couple until moving to Alaska to live with their maternal grandparents in December of 1984.

In June of 1985, the children's grandmother discussed the topic of sexual abuse with A.C. and asked if she had ever been sexually abused. A.C. responded that she had been abused by Henderson. The next day, the grandmother took A.C. to Anne Drake, a family therapist. A.C. repeated her sexual abuse allegations and Drake contacted the Alaska Division of Family and Youth Services, which initiated a criminal investigation. During the investigation, the children recounted acts of simulated sexual intercourse between A.C. and her brothers and acts of sexual intercourse between Henderson and A.C.

The State of Montana (State) charged Henderson with accountability for incest and sexual intercourse without consent: he was convicted of these offenses on June 10, 1988. Henderson failed to appear for sentencing and a bench warrant was issued.

2

Henderson was apprehended four and one-half years later on December 31, 1992.

In a written judgment dated March 19, 1993, the District Court sentenced Henderson to consecutive terms of incarceration totaling sixty years and recommended that Henderson not be eligible for parole. The parole board notified the District Court that the language in the judgment did not prevent Henderson from being paroled and, on April 9, 1993, the District Court entered an amended judgment precluding parole or participation in a supervised release program. Additional facts are included in our discussion of the issues.

Did the District Court abuse its discretion by denying Henderson's motion for a directed verdict of acquittal on the accountability for incest charge?

The State charged that Henderson "knowingly before and during the commission of the offense of incest with the purpose to promote such commission solicited [B.C.] and [D.C.] to have sexual contact with their sister [A.C.]." (Emphasis added.) This charge stemmed from the children's accounts of incidents where Henderson made D.C. and B.C. remove their clothes, lie on top of the naked A.C., and "move up and down." While the children performed these simulated sex acts, Henderson masturbated nearby. At the close of the State's case, Henderson moved for a directed verdict of acquittal on the accountability charge. The District Court denied the motion and the jury found Henderson guilty of the offense.

The grant or refusal of a directed verdict is within the trial court's discretion. State v. Downing (1989), 240 Mont. 215, 217,

3

783 P.2d 412, 413.   A directed verdict is appropriate only where there is no evidence upon which a trier of fact could base a guilty verdict.   State v. Matson (1987), 227 Mont. 36, 42, 736 P.2d 971, 974.

Henderson argues that the District Court erred in denying his motion because the physical contact between the children did not constitute incest and, as a result, he cannot be convicted of accountability for that offense.   We agree.

A person is legally accountable for the conduct of another when:

> either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense.

Section 45-2-302(3), MCA.   A charge of accountability under § 45-2-302(3), MCA, must arise from the commission of an underlying offense.   See Downing, 783 P.2d 412, 414.   The underlying offense here was the alleged incest involving A.C. and her brothers.   Thus, the District Court properly denied Henderson's motion for a directed verdict if the State produced evidence upon which a jury could find that the acts of simulated intercourse between A.C. and her brothers constituted the offense of incest.

Section 45-5-507(1), MCA, states in relevant part: "A person commits the offense of incest if he knowingly . . . has sexual contact as defined in 45-2-101 with an ancestor, descendant, a brother or sister . . ., or any stepson or stepdaughter."   Sexual contact is "any touching of the sexual or other intimate parts of

4

the person of another for the purpose of arousing or gratifying the sexual desire of either party." Section 45-2-101(60), MCA. This definition of sexual contact requires that either the person performing the touching or the person being touched engage in the touching for the purpose of sexual arousal or gratification. Therefore, the State was required to introduce evidence from which the jury could find that one of the children engaged in these simulated sex acts for the purpose of sexual arousal or gratification.

The State's evidence did not establish that the children engaged in the intimate touching for this purpose. Indeed, the State's witnesses established the opposite; the children were angry because of the coerced acts, considered the acts embarrassing, and did not want to participate in the acts. We conclude that the State failed to introduce evidence on which the jury could find that the children committed the offense of incest and, therefore, Henderson could not be legally accountable for that offense under § 45-2-302(3), MCA.

The State argues that the evidence established accountability for incest pursuant to § 45-2-302(1), MCA. We observe, however, that the State framed the accountability for incest charge using the language of § 45-2-302(3), MCA, and, in its argument opposing the motion for a directed verdict, the State clearly stated that the charge was based on subsection (3) of the statute. It is axiomatic that a party may not change the theory on appeal from that advanced in the district court. Donnes v. State ex rel.

5

Superintendent of Public Instruction (1983), 206 Mont. 530, 537, *672* P.2d *617,* 621. This principle is especially important in criminal prosecutions where the State must inform the defendant of the nature of the criminal charges so the defendant may present a defense. State v. Sanderson (1985), 214 Mont. 437, 453-54, 692 P.2d 479, 488. We decline to address the merits of this argument.

Absent evidence that the offense of incest was committed, there was no evidence upon which the jury could base a verdict of guilty on the accountability for incest charge. We hold, therefore, that the District Court abused its discretion in denying Henderson's motion for a directed verdict of acquittal on that charge.

Did the District Court abuse its discretion in admitting the testimony of Anne Drake?

Anne Drake began counseling the children to address emotional problems associated with their move to Alaska. Her practice consisted primarily of family and marital counseling. She began counseling the children regarding the alleged sexual abuse, however, following A.C.'s disclosure to her grandmother in June of 1985.

During trial, the State offered Drake as an expert witness to testify to the validity of the children's allegations of sexual abuse and A.C.'s statements identifying Henderson as the perpetrator. Over Henderson's objection, the District Court accepted Drake as an expert witness and admitted her testimony.

The admissibility of evidence rests within the discretion of

the trial court and is reviewed only for a manifest abuse of that discretion. Stat@ v. Van Pelt (1991), 247 Mont. 99, 104, 805 **P.2d 549, 552.** A party's assertion of error "must stand or fall on the ground relied on by the trial **court."** State **Dep't** of Highways v. DeTienne (1985), 218 Mont. 249, 256, 707 **P.2d** 534, 538.

A. Drake's testimony regarding the validity of the children's statements.

The parties argue for and against the retroactive application of cases determining the necessary qualifications for an expert witness on child sexual abuse which were decided between the 1988 trial of this matter and Henderson's sentencing in 1993. Henderson argues for application of State v. Harris (1991), 247 Mont. 405, 808 **P.2d** 453, and State v. Scheffelman (1991), 250 Mont. 334, 820 **P.2d** 1293. Application of Scheffelman would mandate a conclusion that Drake did not possess the needed qualifications for expert witness status and, on that basis, that the **District** Court erred by admitting her testimony regarding the validity or credibility of the children's statements. The State argues against application of those cases: according to the State, State v. Geyman (1986), 224 Mont. 194, 729 **P.2d** 475, should be applied to affirm the **District** Court's admission of Drake's testimony.

The parties' arguments relate to whether Drake was qualified as an expert on child sexual abuse to offer an opinion on the credibility of the children's statements. Our decision, however, addresses the issue raised by Henderson's objection at trial. That objection, although somewhat ambiguous, essentially was that

7

Drake's opinion on the validity of the children's statements lacked an adequate foundation.

Following Drake's testimony regarding her professional background, Henderson voir dired Drake. Henderson inquired about the "generally accepted" criteria used in validating a child's allegations of sexual abuse and whether Drake had experience in assessing the validity of such allegations. Drake responded that the means of establishing the validity of allegations made by a child A.C.'s age involved reviewing and determining the consistency of the child's statements.

In response to questions regarding the statements she actually reviewed in forming her opinion, Drake indicated that she had not read any of the children's statements or medical reports, viewed the videotaped depositions, ortalkedto any investigators assigned to the case. She testified that her determination that A.C.'s statements were consistent and, therefore, "valid" or credible, was based largely on the similarity of A.C.'s statements to Drake and her grandmother.

Henderson objected to Drake expressing an opinion on the validity of A.C.'s statements because, according to her own testimony, the opinion was not based on the generally accepted criteria for validating such statements. The District Court overruled the objection and allowed Drake to testify that she believed "that what the children told [her] did indeed happen to them," and "[she] felt like they were quite honest and candid with [her]."

8

Rule 703, M.R.Evid., which was adopted verbatim from the federal rule, addresses the foundation necessary for expert opinion; it permits an expert to use sources and kinds of information which other experts in that particular field reasonably rely on to form an opinion on a particular subject. "In determining whether an expert's reliance on information is reasonable, the courts evaluate the opinion and its foundation on a case-by-case basis." 3 Weinstein's Evidence ¶ 703[03], 703-24 (1993). In instances where the expert lacks an adequate basis, the trial court must reject the opinion testimony. See Cella v. U.S. (7th Cir. 1993), 998 F.2d 418, 423.

According to Drake, child sexual abuse experts form opinions regarding the validity of a child's statements by reviewing and determining the consistency of the child's various reports. Based on Drake's own testimony that she did not determine the consistency of the children's numerous statements and formed her opinion based on limited statements made by A.C., we conclude that Drake's opinion on the validity of the children's statements lacked an adequate foundation. We hold, therefore, that the District Court abused its discretion by admitting that opinion testimony.

B.   Drake's testimony repeating A.C.'s statements identifying Henderson as the perpetrator.

The State argues that Henderson failed to object to Drake's testimony repeating A.C.'s out-of-court statements identifying Henderson as the perpetrator and, as a result, the issue is not properly before us. We disagree.

After hearing the parties' arguments, the District Court determined that Drake's testimony was admissible pursuant to the hearsay exceptions contained in subsections (4) and (24) of Rule 803, M.R.Evid. Henderson subsequently preserved his objection that the testimony was inadmissible pursuant to Rule **803(24),** M.R.Evid., on the record prior to Drake's direct examination. This procedure meets the requirement of Rule 103(a)(l), M.R.Evid., that a specific objection appear of record. Counsel are not required to restate an objection once it has been made and preserved. We conclude that this issue is properly before us.

Henderson urges the application of our 1991 <u>Harris</u> decision to resolve the issue of whether Drake's testimony repeating **A.C.'s** statements identifying Henderson as the perpetrator was properly admitted. He contends that, under <u>Harris</u>, this testimony is inadmissible pursuant to the Rule **803(24),** M.R.Evid., exception because **A.C.'**s own testimony at trial was the most probative evidence on the subject. The State does not address this issue separately but merely restates its opposition to applying any decisions retroactively to the time of the 1988 trial in this case.

No retroactive application is necessary to conclude that Drake's testimony in this regard was inadmissible hearsay. Henderson was convicted on June 10, 1988, and was scheduled to appear for sentencing on August 18, 1988. Had he appeared for sentencing and thereafter appealed his conviction, our decision in State v. J.C.E. **(1988),** 235 Mont. 264, 767 **P.2d** 309, clearly would have applied to Henderson's appeal.

In J.C.E., the district court excluded as hearsay a counselor's testimony regarding a child incest victim's out-of-court statements identifying the defendant as the perpetrator. On appeal, the State argued that the counselor's testimony was admissible pursuant to Rule 803(4), M.R.Evid., the medical diagnosis and treatment exception to the hearsay rule. J.c.E., 767 P.2d at 313. We refused to expand that exception to allow the admission of a child's hearsay statements regarding alleged incidents of sexual abuse through the testimony of a family counselor even where, as in J.C.E., the child victim did not testify at trial. J.C.E., 767 P.2d at 313. Our decision was based on the conclusion that the circumstantial guarantee of trustworthiness underlying the medical treatment exception is "less forceful" in cases involving children because a "child might not comprehend the necessity of telling a doctor the truth in order to aid diagnosis and treatment." J.C.E., 767 P.2d at 314.

The District Court in this case faced a situation similar to that presented by J.C.E. in that the State sought to admit A.C.'s hearsay statements identifying Henderson as the perpetrator through Drake's testimony. Here, the District Court admitted the testimony pursuant to Rule 803(24), M.R.Evid., the catch-all exception to the hearsay rule which allows admission of statements having circumstantial guarantees of trustworthiness comparable to the other exceptions listed in Rule 803. It reasoned that a child's statements to a family counselor possessed a circumstantial guarantee of trustworthiness comparable to statements made to a

11

medical doctor which are admissible pursuant to Rule 803(4), M.R.Evid. Having rejected such testimony in J.C.E., under the more direct Rule 803(4), M.R.Evid., exception for lack of sufficient guarantees of trustworthiness, we cannot conclude that the testimony at issue here possessed sufficient guarantees of trustworthiness to warrant admission under the "other exceptions" provided in Rule 803(24), M.R.Evid. We hold, therefore, that the District Court abused its discretion by admitting Drake's testimony repeating A.C.'s hearsay statements identifying Henderson as the perpetrator.

Henderson raises two additional issues: whether the District Court had authority to amend the written judgment and whether the twenty-year sentence for accountability for incest was lawful. Our resolution of the above issues renders it unnecessary to address the additional issues.

Reversed and remanded for entry of a directed verdict of acquittal on the charge of accountability for incest and for a new trial on the charge of sexual intercourse without consent.

_____
                                              Justice

We concur:

_____
            Chief Justice

_____

_____

12

William E. Hunt, Sr.

Justices

July 7, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Edmund F. Sheehy, Jr.
Cannon & Sheehy
P.O. Box 5717
Helena, MT 59604-5717


Hon. Joseph P. Mazurek
Attorney General
Justice Bldg.
Helena, MT 59620


Robert L. Deschamps, III, County Attorney
Betty Wig, Deputy
Missoula County Courthouse
Missoula, MT 59802


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy