DA 15-0040

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 177

FILED

07/26/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0040

STATE OF MONTANA,

>Plaintiff and Appellee,

v.

JOSHUA JAMES KLINE,

>Defendant and Appellant.

APPEAL FROM:  District Court of the Third Judicial District,
In and For the County of Anaconda-Deer Lodge, Cause No. DC-13-70
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

>For Appellant:

>Colin M. Stephens, Smith & Stephens, P.C., Missoula, Montana

>For Appellee:

>Timothy C. Fox, Montana Attorney General, Brenda K. Elias, Assistant Attorney General, Helena, Montana

>Ellen Donohue, Deputy Deer Lodge County Attorney, Anaconda, Montana

Submitted on Briefs:  May 4, 2016

Decided:  July 26, 2016

Filed:

_____

Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Joshua James Kline (Kline) appeals from a judgment and sentence entered by the Third Judicial District Court, Deer Lodge County, convicting him of criminal distribution of dangerous drugs, endangering the welfare of children, and incest. We affirm.

¶2     We restate the issues Kline presents for review:

*1. Did the District Court err by concluding S.K. was not legally accountable for Kline's incest?*

*2. Was there sufficient evidence corroborating S.K.'s testimony?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     On December 11, 2013, the State charged Kline by information with criminal distribution of dangerous drugs, a felony, in violation of § 45-9-101(1), MCA; endangering the welfare of children, a felony, in violation of § 45-5-622(3)(c), MCA; and incest, a felony, in violation of § 45-5-507, MCA. The information alleged Kline committed these offenses when he gave methamphetamine to S.K., Kline's biological daughter, on more than one occasion; allowed S.K. to ingest methamphetamine while in his care on more than one occasion; and had sexual intercourse or sexual contact with S.K.

¶4     The District Court held a jury trial from May 27 to May 29, 2014. At trial, S.K. testified that, while she was 17 years old, Kline repeatedly recommended she try methamphetamine. She initially said no, but eventually said yes and tried the drug. She continued using methamphetamine with Kline, often in Kline's vehicle while it was parked at a local truck stop and casino. Kline's other daughter, S.K.'s younger sister

2

(Sister), testified that she observed Kline give S.K. methamphetamine and observed Kline and S.K. smoking methamphetamine in the front seat of Kline's vehicle while she was in the back seat. S.K.'s blood tested positive for methamphetamine.

¶5    S.K. testified that sometimes, when Kline parked at the truck stop and casino, Kline would go inside and gamble while S.K. waited alone in the vehicle. S.K. could not go inside because she was underage. After Kline gambled, Kline and S.K. would have sexual intercourse in the vehicle. S.K. testified that she and Kline had consensual sexual intercourse every day for around two months, sometimes in Kline's vehicle and sometimes in the bed they shared while intermittently living at Kline's parent's house. S.K. testified that she first disclosed her incestuous relationship in several text messages she sent to her cousin, some of which read "I had sex with my dad like 100 times," "It was my choice," and "I was high on that white shit." S.K. testified that she sent text messages with similar content to Sister, who in turn notified their mother (Mother).

¶6    The jury returned verdicts of guilty for each of the three felony offenses charged. The District Court sentenced Kline to concurrent terms of twenty years for criminal distribution of dangerous drugs, five years for endangering the welfare of children, and life imprisonment for incest.

¶7    Kline appeals only his incest conviction on the grounds that S.K., his 17-year-old daughter, was legally accountable for Kline's conduct when he had sexual intercourse with her. Kline argues that S.K. was legally accountable for his incest and, as a result of her accountability, the State was required to provide evidence corroborating her

3

testimony and he was entitled to a jury instruction cautioning the jurors to view S.K.'s testimony with distrust.

¶8 Prior to trial, the State filed a motion in limine requesting the District Court preclude Kline "from arguing and/or introducing evidence that [S.K.] is an accomplice to the crime of *Incest* or that she is in any way legally accountable for [Kline's] conduct for the crime." Kline objected to the State's motion and argued that S.K. was legally accountable for his incest. The District Court concluded S.K. was Kline's victim, stating, "It's illegal for relatives to have sex with each other. It's incest. They are each other's victims." The District Court concluded S.K., as Kline's victim, was not legally accountable for Kline's conduct and granted the State's motion.

¶9 At trial, Kline raised the issue of S.K.'s legal accountability for his incest when he moved for a directed verdict of acquittal on the incest charge because the State failed to present evidence of incest corroborating S.K.'s testimony. The District Court denied Kline's motion. Kline also requested a jury instruction directing the jury to view S.K's testimony with distrust because she was legally accountable. The District Court refused to give that instruction. Kline appeals. On appeal, Kline argues the District Court erred in granting the State's motion in limine, denying his motion for a directed verdict of acquittal, and refusing to instruct the jury on accountability. The errors Kline asserts are all premised upon the District Court's initial conclusion that S.K. was not legally accountable because she was a victim under § 45-2-302(3)(a), MCA.

**STANDARD OF REVIEW**

4

¶10    A District Court's interpretation of a statute is reviewed for correctness. *Payne v. Knutson*, 2004 MT 271, ¶ 14, 323 Mont. 165, 99 P.3d 200 (citations omitted).  We conduct a de novo review of the record for sufficient evidence.  *State v. Bekemans*, 2013 MT 11, ¶ 18, 368 Mont. 235, 293 P.3d 843 (citation omitted).

**DISCUSSION**

¶11    *Did the District Court err by concluding S.K. was not legally accountable for Kline's incest?*

¶12    "A person commits the offense of incest if the person knowingly marries, cohabits with, has sexual intercourse with, or has sexual contact, as defined in 45-2-101, with an ancestor, descendant, a brother or sister of the whole or half blood, or any stepson or stepdaughter."  Section 45-5-507(1), MCA.  Pursuant to § 45-5-507(2), MCA, "[c]onsent is a defense . . . to incest with or upon a stepson or stepdaughter, but consent is ineffective if the victim is less than 18 years old."  The parties maintain that subsection (2) applies only to incest involving stepchildren and that it is therefore not applicable to the circumstances here.  We agree.  Additionally, the penalty provisions of § 45-5-507, MCA, are graduated and dependent upon the age of the participants, distinguishing when the "victim" is under 16 years of age or under 12 years of age.  S.K. was 17 years old at the time of the offense and thus the provisions characterizing one of the participants as a "victim" are similarly inapplicable.

¶13    "Under Montana criminal law, an individual is responsible for his or her own conduct."  *In re B.W.*, 2014 MT 27, ¶ 18, 373 Mont. 409, 318 P.3d 682.  In fact, pursuant to general maxims of jurisprudence, "[n]o one should suffer for the act of another," and

5

"[a] person is not responsible for that which a person cannot control." Sections 1-3-211, -217, MCA. These maxims arise from fundamental principles in criminal law which seek to hold the primary perpetrator responsible for his or her own conduct in causing the criminal offense; that is, it is a basic precept that personal wrongdoing is a predicate to criminal punishment. The law recognizes, however, that circumstances may exist in which persons other than those actually committing the offense should nonetheless be held criminally culpable. "One may be responsible for the conduct of another only in limited circumstances." *B.W.*, ¶ 18. The theory of accountability, or accomplice liability, is one such limited circumstance and has its origins in early Anglo-American jurisprudence. Such a theory prevents secondary parties from escaping liability when they are as equally blameworthy for committing the crime as the perpetrator herself. Accountability theory evolved from and attempted to simplify intricate common law distinctions between principals in the first degree, principals in the second degree, accessories before the fact, and accessories after the fact. Thus, we have explained, "accountability is not a separate offense from the crime for which the actor assumes accountability but 'is merely a conduit by which one is held criminally accountable for the acts of another.'" *B.W.*, ¶ 19, (quoting *State v. Hatten*, 1999 MT 298, ¶ 50, 297 Mont. 127, 991 P.2d 939).

¶14 Sections 45-2-301 and -302, MCA, entitled "Accountability for conduct of another" and "When accountability exists," "describe those circumstances in which liability may be based upon the conduct of another." *B.W.*, ¶ 18 (citation omitted). "A person is responsible for conduct that is an element of an offense if the conduct is either

6

that of the person or that of another and the person is legally accountable for the conduct as provided in 45-2-302, or both." Section 45-2-301, MCA. Section 45-2-301, MCA, provides that a person is "either:" (1) *responsible* for their own conduct, "or" (2) *legally accountable* for the acts of another if § 45-2-302, MCA, applies.[1] Section 45-2-301, MCA, therefore encompasses both theories of criminal culpability—personal wrongdoing and accountability.

¶15 Section 45-2-302, MCA, specifies when the accountability theory of culpability may be applied to hold one responsible for the conduct of another.

> A person is legally accountable for the conduct of another when:
> (1) having a mental state described by the statute defining the offense, the person causes another to perform the conduct, regardless of the legal capacity or mental state of the other person;
> (2) the statute defining the offense makes the person accountable; or
> (3) either before or during the commission of an offense with the purpose to promote or facilitate the commission, the person solicits, aids, abets, agrees, or attempts to aid the other person in the planning or commission of the offense. However, a person is not accountable if:
>> (a) the person is a victim of the offense committed, unless the statute defining the offense provides otherwise.

Section 45-2-302, MCA. Accordingly, § 45-2-302, MCA, "replaces all prior law regarding accessories. Under this section, any person who assists in the commission of a crime, either before or during the occurrence, other than the victim, is liable as a principal offender." Compiler's Comments to § 45-2-302, MCA, at 166 (2014 annotations).

---

[1] Section 45-2-301, MCA, also contemplates that a person may be both responsible for the criminal offense and accountable for the acts of another when the other person commits the offense. However, as we discuss *infra*, the crime of incest is unique in that it requires two participants who may willingly engage in and each be held responsible for their actions if they are over 16 years of age. Whether a person can be held both responsible and accountable for the acts of others will depend on the particular facts and the crime(s) charged.

¶16 In recognition that a person responsible or accountable for an offense may be inherently untrustworthy and have a motive to testify untruthfully, § 46-16-213, MCA, provides:

> A person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense.

Additionally, if "a person legally accountable for the acts of the accused" testifies, the jury must be instructed that the person's testimony "ought to be viewed with distrust." Section 26-1-303(4), MCA.

¶17 Relying on § 45-2-302, MCA, Kline argues S.K. was legally accountable for his incest. Kline argues that, because S.K. was legally accountable, § 46-16-213, MCA, required the State to corroborate her testimony with other evidence of his incest, and § 26-1-303(4), MCA, required the jury be cautioned about her veracity. However, the District Court concluded S.K. was not legally accountable for Kline's incest, making the evidentiary corroboration and jury instruction unnecessary.

¶18 We agree with the District Court that S.K. was not legally accountable. Had the State chosen to charge S.K., it would have been incorrect to rely upon accountability theory to prosecute S.K. for incest. S.K. was responsible for her own commission of incest, and she was not simultaneously responsible under a theory of accountability for Kline's commission of incest. The rules governing legal accountability do not arise in

8

circumstances where liability could be based on S.K.'s responsibility for her own conduct in the first instance.

¶19 The State did not prosecute S.K. The State's choice does not implicate whether or not she was also responsible for incest. In *State v. Harris*, 1999 MT 115, ¶ 22, 294 Mont. 397, 983 P.2d 881, the State prosecuted Harris for engaging in incest with his adopted daughter. Harris argued that the State's failure to prosecute his adopted daughter for her incest with him constituted disparate treatment of members of the same class and violated his constitutional right to equal protection. *Harris*, ¶ 21. This Court disagreed. We concluded that the prosecutor had broad discretion to prosecute or not prosecute Harris' adopted daughter and Harris failed to show the prosecutor's decision was based on an arbitrary or unjustifiable standard. *Harris*, ¶ 24. Here, the prosecutor's decision not to charge S.K. similarly demonstrates an appropriate exercise of its broad discretion.

¶20 S.K. was not legally accountable for Kline's incest under § 45-2-302, MCA, because 1) S.K. did not knowingly cause Kline to commit incest; 2) § 45-5-507, MCA, does not make S.K. accountable for Kline's conduct; and 3) S.K. did not purposefully solicit, aid, abet, agree, or attempt to aid Kline plan or commit incest. Instead, S.K. independently committed the actions proscribed by § 45-5-507, MCA, by knowingly having sexual intercourse with Kline. Therefore, although S.K. is responsible under § 45-2-301, MCA, the rules governing when "[a] person is legally accountable for the conduct of another" do not apply to S.K. or make her accountable for Kline's incest.

¶21 Incest is a qualitatively unique sexual offense because the act itself is unlawful whether or not it is consensual or a minor is involved and especially because it requires

9

two participants. Accountability cannot be applied to the participants in incest because accountability is a theory of transferring culpability to a non-actor that is unnecessary where each participant is responsible for his or her own conduct and independently commits the offense. Instead, our case law suggests that accountability for incest requires three actors: two related participants engaging in sexual contact or sexual intercourse and a third party who in some manner either knowingly causes incest or solicits, aids, abets, agrees, or attempts to aid another in the planning or commission of incest.

¶22 In *State v. Guill*, 2011 MT 32, ¶ 3, 359 Mont. 225, 248 P.3d 826, which we noted was "factually one of the more bizarre cases to reach this Court," a third party, Nicole, was convicted of incest by accountability for facilitating incest between her boyfriend and his daughter. Douglas Guill started molesting his daughter when she was six years old. *Guill*, ¶ 27. Nicole and Douglas started dating and Nicole moved in with him, his children, and his then-wife, Candace, who was thereafter "relegated to the status of an unseen domestic worker." *Guill*, ¶ 12. "Nicole began participating in the sexual abuse" of Douglas's daughter when she was eight years old and continuing until she was 22 years old. *Guill*, ¶ 28. Together the three would regularly engage in behavior constituting sexual contact and sexual intercourse. *Guill*, ¶ 28. Although Nicole did not commit incest, because, at the time, she was unrelated to Douglas's daughter by either blood or marriage, she was convicted of incest by accountability, among other offenses, for her sexual involvement with Douglas and his daughter. *Guill*, ¶ 43.

10

¶23   In another case of accountability for incest, *State v. Henderson*, 265 Mont. 454, 457, 877 P.2d 1013, 1015 (1994), Henderson coerced his three stepchildren into undressing and simulating sex acts while he masturbated nearby.  This Court overturned his conviction because the children's actions did not constitute the predicate offense of incest that was necessary to uphold his conviction for accountability for incest. *Henderson*, 265 Mont. at 458, 877 P.2d at 1016.  The children's actions did not constitute incest because incest requires sexual contact, which, under § 45-2-101(60), MCA, requires participation be motivated by either sexual arousal or gratification.  *Henderson*, 265 Mont. at 458, 877 P.2d at 1015.  The children's actions did not constitute sexual contact because they did not "engage in the touching for the purpose of sexual arousal or gratification."   *Henderson*, 265 Mont. at 458, 877 P.2d at 1016.  Instead, evidence showed that the children were angry, embarrassed, and did not want to participate in the forced acts.   *Henderson*, 265 Mont. at 458, 877 P.2d at 1015-16.   Under the circumstances, we concluded, "the State failed to introduce evidence on which the jury could find that the children committed the offense of incest and, therefore, Henderson could not be legally accountable for that offense." *Henderson*, 265 Mont. at 458, 877 P.2d at 1016.

¶24   *Guill* and *Henderson* demonstrate that a person can be held accountable for incest under § 45-2-302, MCA, when the person is a third party to two related participants in incest and the person's conduct alone does not satisfy the offense.  Here, S.K. was not a third party, but a participant in incest.  In both *Guill* and *Henderson*, the person charged with incest by accountability had not committed incest.  In *Guill*, Guill was not related to

11

Douglas' daughter by either blood or marriage. In *Henderson*, Henderson did not have sexual contact or sexual intercourse with his stepchildren. Unlike in *Guill* and *Henderson*, here, S.K. was not a third party to incest, but personally responsible for every element of incest. Therefore, S.K. was not legally accountable for Kline's incest under § 45-2-302, MCA. The District Court did not err in granting the State's motion in limine and refusing to instruct the jury under § 26-1-303(4), MCA, because S.K. was not legally accountable.

¶25    *2. Was there sufficient evidence corroborating S.K.'s testimony?*

¶26    Despite not being legally accountable, S.K. was responsible for incest and the State was required to provide "other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense." Section 46-16-213, MCA.

¶27    The State presented evidence to the jury, through testimony from various witnesses other than S.K. Several of S.K.'s family members testified. Sister testified that Kline and S.K. shared a bed, pillow, and blanket when they lived at Kline's parent's house in their "back bedroom," even though an additional bed in the house was unoccupied. When S.K. needed to go to the police station to meet a detective, Kline testified that he dropped her off a half block away instead of accompanying her inside. He explained to the jury, "I thought I was in trouble too, so I didn't want to go to jail that night." Kline's mother, testified that S.K. was very attached to Kline, was upset, cried, and called him when he left without her, and would accompany him to casinos and wait in the car "for hours on end" while he gambled. Sister testified she disclosed to Mother

that S.K. was smoking methamphetamine with Kline, cutting herself, and having an incestuous relationship with Kline. Mother testified that after she was notified, she took S.K. to the hospital to be examined by Douglas Dunham, a doctor of emergency medicine, and contacted local police.

¶28 A detective and several medical professionals testified. Detective Ken Walund testified that Mother contacted him with concerns about Kline supplying drugs to, and having sex with, S.K. Detective Walund testified that when he interviewed S.K., S.K. disclosed using drugs and having sexual intercourse with Kline. Detective Walund testified that S.K. seemed "very embarrassed, shy, withdrawn," had difficulty answering his questions, and "[s]he was blaming herself." Detective Walund testified that, during her interview, S.K. expressed that she did not want criminal charges brought against Kline. Detective Walund testified that he also interviewed Kline. During his interview with Kline, Detective Walund testified that Kline's reactions to the allegations were unexpected, "he got extremely nervous, fidgeting, no eye contact."

¶29 After examining S.K., Dr. Douglas testified that he diagnosed her with "depression, methamphetamine use and mood disorder." Sue Casey, a forensic interviewer and contractor with the Child Evaluation Center, testified that she interviewed S.K. Casey testified that, during her interview with S.K., S.K. seemed reluctant, which is a characteristic consistent with victims of sexual abuse. Casey testified that S.K. disclosed the sexual activity to her by writing down what had happened to her, while verbally expressing her embarrassment. Casey testified that when family members are involved in sexual abuse cases, the children are often groomed beforehand

"[a]nd kids, they crave the love and affection and attention from the parents, so it gets really confusing to them when those boundaries are just violated." We conclude the State presented sufficient evidence to the jury corroborating S.K.'s testimony regarding incest. The District Court properly denied Kline's motion for a directed verdict of acquittal based on the State's failure to present corroborating evidence.

¶30 Finally, we take this opportunity to explain why both the State and the District Court reached the correct conclusion, that S.K. was not legally accountable, but for the wrong reasons. Section 45-2-302(3)(a), MCA, excepts victims from being legally accountable. The State and the District Court agree that S.K. was not accountable because she was Kline's victim under this exception, although they disagree about why she was his victim.

¶31 Relying on *People v. Tobias*, 21 P.3d 758 (Cal. 2001), the State argued S.K. was Kline's victim because she was under 18 years old. In *Tobias*, the defendant appealed his conviction for incest, "arguing among other things that the trial court should have instructed the jury to consider whether [defendant's daughter] was an accomplice." *Tobias*, 21 P.3d at 760. Based on California's statutory scheme, which penalized sexual intercourse with someone under 18 years old, the California Supreme Court concluded, that a minor is a victim of incest, not an accomplice to incest. *Tobias*, 21 P.3d at 762. Concluding defendant's daughter was a victim because of her age, the California Supreme Court affirmed the district court's failure to instruct the jury on accomplices. *Tobias*, 21 P.3d at 765.

¶32     In contrast, relying on *State ex rel. Keyes v. Montana Thirteenth Judicial Dist. Court*, 1998 MT 34, 288 Mont. 27, 955 P.2d 639, the District Court concluded both that S.K. was Kline's victim and Kline was S.K.'s victim.  In *Keyes*, Keyes and LaFromboise "exchanged gunfire from their respective vehicles" and, during their "shoot-out," a passenger in LaFromboise's vehicle was killed.  *Keyes*, ¶ 1.  The State charged Keyes with three alternative counts of deliberate homicide, one under the felony murder rule and two by accountability.  *Keyes*, ¶ 3.  Discussing the accountability statute, this Court stated, "[e]ven if the charge was interpreted to allege the commission of two criminal offenses, Keyes becomes the victim of LaFromboise's offense, and LaFromboise becomes the victim of Keyes' offense.  As a victim, neither can be legally accountable for a death caused by the other's crime.  Montana's accountability statute excludes victims from such accountability."  *Keyes*, ¶ 31.  The District Court used this case as authority to conclude S.K. and Kline "are each other's victims.  [S.K.], if this happened, is [Kline's] victim.  The statute does not say otherwise, [§ 45-2-302(3)(a), MCA], and she's not accountable."

¶33     We disagree with the conclusion that either S.K. or Kline is a victim of incest.  If both participants are over the age of 16, as they were here, the statute criminalizes both as participants in incestuous conduct.  In our reading, § 45-5-507(1), MCA, does not require a victim.  Incest requires two relatives engaging in sexual contact or sexual intercourse.  Depending on the circumstances, it could be that neither are victims, both are victims, or only one is a victim.  In some cases it may be clear who constitutes a victim; in others, unclear.  Fortunately, § 45-5-507(1), MCA, does not contemplate, or require, a

15

determination of who is a victim of incest unless one party is under the age of 16.  In that case, § 45-5-507(4), MCA, presumes the party under 16 is a victim because they are legally incapable of consenting to sex.

¶34    "[W]e will affirm a district court's decision when it reaches the correct result for the wrong reasons."  *State v. Morrisey*, 2009 MT 201 ¶ 49, 351 Mont. 144, 214 P.3d 708 (citing *State v. Howard*, 2008 MT 173, ¶ 20, 343 Mont. 378, 184 P.3d 344).  Although the District Court concluded S.K. was a victim under § 45-2-302(3)(a), MCA, instead of a participant under § 45-5-507(1), MCA, its conclusion that she was not legally accountable was the correct result.

## CONCLUSION

¶35    For the foregoing reasons, the District Court correctly concluded S.K. was not legally accountable for Kline's incest.  Affirmed.


                                                                    /S/ LAURIE McKINNON


We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE


Justice Beth Baker, concurring.

¶36    The Court correctly analyzes the Incest statute and its application to Kline.  I add only an observation: the statute as written treats both an adult man and his minor

16

daughter as equally complicit in a sexual relationship. I doubt this is what the Legislature intended, but the statute is not reasonably susceptible to another construction.

¶37 Applied to consenting adults or to siblings, the statute properly treats both actors in an incestuous relationship as responsible for the offense. Section 45-5-507(1), MCA. And the statute rightly makes a stepson's or stepdaughter's consent ineffective if the child is under 18. Section 45-5-507(2), MCA. But when, as here, a father has sexual intercourse with his underage natural daughter, her consent to the act makes her his partner in crime. The statute thus seems to perpetuate a long-outdated philosophy that a young girl is responsible for sexual crimes committed against her. Public policy otherwise spurns the notion that an adult may use a parental relationship to take sexual advantage of his minor child. *See, e.g.*, *Langford v. State*, 2013 MT 265, 372 Mont. 14, 309 P.3d 993 (upholding sex offender registration for offender convicted of incest with teenage daughter); *In re S.L.T.*, 215 Mont. 289, 697 P.2d 472 (1985) (affirming finding that teenage girl subjected to sexual acts by her adopted father was abused and neglected, and upholding grant of legal custody to the State). The Legislature may wish to take a fresh look at the Incest statute to address this paradoxical result.

/S/ BETH BAKER

Justice Michael E Wheat joins in the concurring Opinion of Justice Baker.

/S/ MICHAEL E WHEAT

17